UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
LEK SECURITIES CORPORATION and
ROX SYSTEMS, INC.

                *Plaintiffs*,

                - against -

NICOLAS LOUIS, JONATHAN FOWLER, VOLANT
HOLDING, LLC d/b/a VOLANT TRADING,
VOLANT TRADING LLC, VOLANT LIQUIDITY,
LLC, AND VOLANT EXECUTION, LLC

                *Defendant*s.
------------------------------------------------------------------ x

Case No.: 1:19-cv-02142-RMB-BCM

## DECLARATION OF WILBERT SHIN

I, Will Shin, under penalty of perjury, declare and affirm as follows:

1.     I am Chief Operating Officer of Volant Liquidity, LLC and Chief Operating Officer and Chief Compliance Officer of Volant Execution, LLC, (together with Volant Liquidity, LLC, Volant Holding, LLC d/b/a Volant Trading and Volant Trading LLC, "Volant") and I make this declaration in opposition to Lek Securities Corporation ("LSC") and ROX Systems, Inc's (together with LSC, the "Plaintiffs") motion for a preliminary injunction and temporary restraining order based upon my personal knowledge of the facts recited herein.

### Volant Plans to Create A State-of-the-Art In-House Clearing System.

2.     Volant is a technology-driven trading firm that specializes in listed options market making and execution services, including in the options clearing space.

3.     On November 1, 2017, Volant acquired Compass Professional Services, LLC, which was later renamed Volant Execution, LLC, for its Options Clearing Corporation

membership and six clearing employees who collectively have over 50 years of experience in clearing options and over 10 years of experience in clearing stock.

4. I have been advised that via Volant's clearing member transfer agreements, Volant clears between approximately 75,000 to 250,000 options contracts per day.

5. Volant is developing a state-of-the-art clearing system by leveraging its existing experience in cutting edge technologies in the highly competitive fields of automated, proprietary electronic market making, trading, and order routing across Volant's memberships and trading activities on over 20 equity, equity options, and futures exchanges in the USA and Asia.

6. A state-of-the-art clearing system is necessary because advances in technology have outpaced technology from just a few years ago and the use of antiquated technology would require the use of additional resources that would add little to Volant's existing technical capabilities. I am aware of at least two software and technology providers that offer real time, non-mainframe self-clearing capabilities, and believe and understand that many firms in the financial services industry use these third-party systems.

7. I have been advised that some of the many modern technologies that Volant intends to draw on in creating its state-of-the-art clearing system include: a serverless architecture; multi-region geo-redundancy (with processes running in multiple locations); cloud-based without any physical location; a highly scalable system using parallel processing with NoSQL technology; and an Online Transaction Processing ("OLTP") System.

8. I have been advised that should Volant ultimately succeed in creating a state-of-the-art clearing system from scratch, that clearing system cannot possibly be active for at least 15-18 months from now, even according to the most aggressive development plan.

9. In order to become fully operational, Volant will need to: (1) be approved for clearing stock and holding customer assets by FINRA, (2) be approved by the Depository Trust & Clearing Corporation and/or its subsidiaries (collectively "DTCC") and given access to its test environment, (3) be approved by the Options Clearing Corporation to expand Volant's options clearing capabilities, and (4) create a clearing infrastructure that supports all functions of a full service clearing firm, including all desired asset classes, and complies with relevant regulations.

10. In order to obtain FINRA approval to clear equities and hold customer assets, Volant will need to file a Continuing Membership Application with FINRA.

11. The Continuing Membership Application with FINRA has not yet been filed, and the approval process will take about 3-6 months after filing.

12. Once approved by FINRA, or upon submitting a draft Continuing Membership Application to DTCC, Volant will receive access to DTCC's test environment and begin work on creating the clearing infrastructure.

13. I have been advised that neither Volant nor Defendants Nicolas Louis ("Louis") and Jonathan Fowler ("Fowler" and together with Louis, the "Individual Defendants") have written any code relating to, or have begun building, Volant's clearing infrastructure.

14. Volant's most aggressive projections suggest that Volant could have a clearing system up and running 12 months after receiving access to DTCC's testing environment.

15. If Volant filed its FINRA application tomorrow, the earliest Volant could have an active, built from scratch clearing system would be 15-18 months from now (June-September 2020).

3

**Louis's and Fowler's Employment with Volant.**

16.     Several months after Plaintiffs terminated the Individual Defendants, Volant and the Individual Defendants began discussing the Individual Defendants' potential employment with Volant, as part of Volant's new and developing partnership with a fintech firm.

17.     Volant was interested in this arrangement due to the generalized skillset that the Individual Defendants have developed throughout their careers in the clearing industry.

18.     Volant required confirmation from the Individual Defendants, and their respective former attorneys, that the former attorneys had collected any of Plaintiffs' information that the Individual Defendants had in their possession and that neither of the Individual Defendants possessed any of Plaintiffs' confidential or proprietary information.

19.     Both Individual Defendants were instructed and both agreed not to access any prior emails with B. Riley personnel or with the other Individual Defendant reflecting Plaintiffs' information.

**Volant Put Procedures in Place to Prevent the Use of Plaintiffs' Proprietary Information.**

20.     Once Volant learned of Louis' Non-Compete and Confidentiality Agreement, dated April 1, 2004, and Fowler's Non-Compete and Confidentiality Agreement, dated October 10, 2011 (together, the "Non-Compete and Confidentiality Agreements", which are included as Exhibits 3 and 4 of the Declaration of Samuel Lek),  Volant, with the assistance of outside intellectual property counsel, instituted several procedures that apply to all Volant personnel participating in the development of Volant's clearing system to ensure that the Individual Defendants do not use, and cannot use, Plaintiffs' proprietary information on behalf of Volant.

21.     Pursuant to these procedures, Volant monitors who writes each version of a component of code.

22. Volant will review all code that the Individual Defendants create to ensure that the Individual Defendants do not copy any blocks of code into Volant's repository and, to the extent practical, that the Individual Defendants cite to publically available information.

23. Volant excluded the Individual Defendants from the process of initially defining the general functionality and scope of Volant's clearing system.

24. Volant continues to exclude the Individual Defendants from defining or developing components of Volant's clearing system relating to (i) reserve formula computations, (ii) margin requirement computations, and (iii) risk monitoring. The Individual Defendants believe these areas may concern Plaintiffs, and Volant excluded the Individual Defendants from these areas to alleviate potential future concerns by Plaintiff.

25. Volant requires all members of its development and business teams to abide by these procedures.

26. Volant undertook other appropriate measures, both internally and in communications with the Individual Defendants, to ensure it would not be in a position to either obtain or use Plaintiffs' confidential or proprietary information.

27. The measures undertaken by Volant with the hiring of the Individual Defendants are significantly more than its usual onboarding and employment procedures, and designed to ensure that Volant does not, and will not, possess any information to which it is not entitled.

**Plaintiffs' Correspondence with Volant and Its Counsel.**

28. In order to respond to any of Plaintiffs' concerns regarding Plaintiffs' proprietary information, Schulte Roth & Zabel LLP, as counsel to Volant, (1) asked LSC to identify the nature of the proprietary information in the Individual Defendants' possession, and (2) offered to discuss additional protective protocols.

5

29. LSC did not identify any type of proprietary information, but instead insisted the Individual Defendants' general knowledge of clearing systems prohibited Volant from employing them in any capacity.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: March 13, 2019
New York, New York

_____
Wilbert Shin