UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x

LEK SECURITIES CORPORATION AND ROX
SYSTEMS INC.

                *Plaintiffs*,

          - against –

NICOLAS LOUIS, JONATHAN FOWLER, VOLANT
HOLDING, LLC d/b/a VOLANT TRADING, VOLANT
TRADING, LLC, VOLANT LIQUIDITY, LLC, AND
VOLANT EXECUTION, LLC

             *Defendants*.

------------------------------------------------------------------ x

Case No.:  19-CV-02142
(RMB/BCM)

 

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## ORDER TO SHOW CAUSE FOR TEMPORARY RESTRAINING
## ORDER, PRELIMINARY INJUNCTION, AND EXPEDITED DISCOVERY

DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10025
(212) 768-6700
Brian.Cousin@dentons.com
*Attorneys for Plaintiffs*


TANNENBAUM HELPERN
SYRACUSE & HIRSCHTRITT LLP
900 Third Avenue
New York, New York 10022
(212) 508-6700
Sarkozi@thsh.com
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

ARGUMENT ............................................................................................................................. 4

I.  PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR
CLAIMS AND NOTHING IN DEFENDANTS' OPPOSITION SHOULD
CONVINCE THIS COURT OTHERWISE. ............................................................ 4

    A.  Plaintiffs Have Adequately Pled the Federal Claims. .................................................... 4

    B.  Plaintiffs Have Shown a Likelihood of Success on the Merits of their Breach
of Contract Claim. .................................................................................................. 6

II.  PLAINTIFFS ARE NOT PRECLUDED FROM SEEKING PRELIMINARY
INJUNCTIVE RELIEF BASED ON THE TIMING OF THEIR APPLICATION. ................ 11

III.  PLAINTIFFS DO NOT SEEK A MANDATORY INJUNCTION, BUT, EVEN IF
THEY DID, THEY MEET THE REQUISITE STANDARD. .............................................. 12

IV.  THE INEVITABLE DISCLOSURE DOCTRINE IS APPLICABLE TO THE
FACTS OF THIS CASE. ............................................................................................... 12

V.  THE BALANCE OF THE EQUITIES DOES NOT FAVOR DEFENDANTS..................... 14

CONCLUSION ........................................................................................................................ 15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aghaeepour v. Northern Leasing Sys., Inc.*,
No. 14-cv-5449, 2015 WL 7758894 (S.D.N.Y. Dec. 1, 2015) ................................................5

*Ayco Co., L.P. v. Frisch*,
795 F. Supp. 2d 193 (N.D.N.Y. 2011) ..............................................................................6

*Bell v. Hood*,
327 U.S. 678 (1946) ..........................................................................................................4

*Canon U.S.A., Inc. v. F. E. Trading*,
LLC, 2017 U.S. Dist. LEXIS 160994 (E.D.N.Y. Sept. 29, 2017) .....................................5

*Citibank N.A. v. Citytrust*,
756 F.2d 273 (2d Cir. 1985) ...............................................................................................11

*Continental Grp., Inc. v. Kinsley*,
422 F. Supp. 838 (D. Conn. 1976) .....................................................................................10

*Coscarelli v. ESquared Hosp. LLC*,
2019 WL 400586 (S.D.N.Y. Jan. 31, 2019) ......................................................................11

*De Long Corp. v. Lucas*,
278 F.2d 804 (2d Cir. 1960) ...............................................................................................10

*Design Partners, Inc. v. Five Star Electric Corp.*,
No. 12-cv-2949, 2017 WL 818364 (E.D.N.Y. Mar. 1, 2017) .............................................9

*In re Document Techs. Litig.*,
275 F. Supp.3d 454 (S.D.N.Y. 2017) ..................................................................................9

*EarthWeb, Inc. v. Schlack*,
71 F. Supp. 2d 299 (S.D.N.Y. 1999) ....................................................................................7

*Estee Lauder Cos. Inc. v. Batra*,
430 F. Supp. 2d 158 (S.D.N.Y. 2006) ..................................................................................7

*Frantic, LLC v. Konfino*, No. 13 Civ. 4516(AT),
2013 WL 5870211 (S.D.N.Y. Oct. 30, 2013) ......................................................................8

*IBM v. Visentin*,
2011 WL 672025 (S.D.N.Y. Feb 16, 2011) ........................................................................13

*International Business Machines Corp. v. Papermaster*,
  No. 08-CV-9078 (KMK), 2008 WL 4974508 (S.D.N.Y. Nov. 21, 2008)..........................6, 10

*Janus et Cie v. Kahnke*,
  2013 WL 5405543 (S.D.N.Y. Aug 29, 2013) ...........................................................................13

*Lumex, Inc. v. Highsmith*,
  919 F.Supp.624 (E.D.N.Y. 1996) ....................................................................................10, 14

*Marietta Corp. v. Fairhurst*,
  754 N.Y.S.2d 62 (3d Dep't 2003)..........................................................................................13

*Monroe v. Hyundai of Manhattan & Westchester*,
  2008 WL 4891223 (S.D.N.Y. Nov. 12, 2008) ........................................................................4

*Muhammad v. Jenkins*,
  No. 12-cv-8525 CM, 2013 WL 5225573 (S.D.N.Y. Sept. 13, 2013) .....................................12

*Nostrum Pharms., LLC v. Dixit*,
  No. 13-cv-8718-CM-AP, 2014 WL 4370695 (S.D.N.Y. Sept. 2, 2014) ..................................7

*Payment Alliance Intern., Inc. v. Ferreira*,
  530 F.Supp.2d 477 (S.D.N.Y. 2007).....................................................................................10

*Poon v. Roomorama*,
  LLC, 2009 WL 3762115 (S.D.N.Y. Nov. 10, 2009) .............................................................11

*Ritani, LLC v. Aghjayan*,
  880 F.Supp.2d 425 (S.D.N.Y. 2012)......................................................................................10

*Savoie v. Merchants Bank*,
  84 F.3d 52 (2d Cir. 1996).......................................................................................................4

*Silipos, Inc. v. Bickel*,
  2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006) ........................................................................14

*Ticor Title Insurance Co. v. Cohen*,
  173 F.3d 63 (2d Cir. 1999).....................................................................................................6

*In re UFG Int'l, Inc.*,
  225 B.R. 51 (S.D.N.Y. 1998)..................................................................................................9

*Vantone Grp. LLC v. Yangpu NGT Indus. Co.*,
  No. 13-cv-7639-LTS-MHD, 2015 WL 4040882 (S.D.N.Y. July 2, 2015)...............................5

*Weight Watchers Int'l, Inc. v. Luigino's, Inc.*,
  423 F.3d 137 (2d Cir. 2005)..................................................................................................11

**Statutes**

18 U.S.C. § 1838.......................................................................................................................4

**Rules and Regulations**

Federal Rules of Civil Procedure
    Rule 8(a).........................................................................................................................5

    Rule 65 ............................................................................................................................4

**Other Authorities**

*New York Practice Series - Commercial Litigation in New York State Courts §*
    *80:7* (Robert L. Haig ed., 2018).................................................................................9

Plaintiffs LSC and ROX Systems, by their attorneys Dentons US LLP and Tannenbaum Helpern Syracuse & Hirschtritt LLP, submit this reply memorandum of law in further support of their motion for a temporary restraining order, preliminary injunction, and expedited discovery against defendants the Former Employees (also referred to herein as the "Individual Defendants") and Volant.[1]

## PRELIMINARY STATEMENT

As set forth below, none of the factual or legal arguments made by either the Individual Defendants or Volant in their opposition papers refutes the need for a temporary restraining order or preliminary injunction. To the contrary, Defendants' papers admit breaches of the Individual Defendants' obligations under their Non-Compete and Confidentiality Agreement with LSC. Moreover, Volant's own employment agreements with the Individual Defendants undermine the arguments they assert against LSC by, among other things, including (1) a provision acknowledging the risk of inevitable disclosure of trade secrets in the clearing systems that Volant was hiring the Former Employees to design and (2) an 18 month post-employment restriction against Louis and Fowler working together.

As for the legal propositions that Defendants assert, their cases are readily distinguishable or simply inapposite. As a threshold matter, federal subject matter jurisdiction is more than adequately pled under the DTSA. LSC's trade secrets – its proprietary and confidential stock and options clearing processes – are alleged in sufficient detail and the Complaint expressly alleges improper disclosure and use by each of the Defendants.

In cases such as this where injunctive relief is sought, irreparable harm is presumed where trade secrets are misappropriated. Furthermore, this Court has consistently held that inevitable disclosure of such trade secrets to establish such irreparable harm will be found where the former employees are bound by a confidentiality and/or non-compete agreement and the former employees' performance of their new

---

[1] Plaintiffs adopt the definitions of the parties as identified in Plaintiffs' Moving Papers. *See* Plaintiffs' Memorandum of Law in Support of Order to Show Cause for Temporary Restraining Order and Preliminary Injunction ("Plaintiffs' MOL"), p. 1.

position – e.g., Director of Clearing and creating a stock and options clearing system from scratch – will inherently require them to draw upon the trade secrets that they learned or developed for their former employer.   Significantly, neither Louis nor Fowler refuted Samuel Lek's declaration that they had no experience in designing clearing systems beyond what they learned and developed as part of LSC's/ROX's unique system.

Defendants also failed to refute that Plaintiffs are likely to succeed on the merits of their breach of contract, DTSA, and misappropriation of trade secret claims.   For example, the Individual Defendants cannot credibly assert that their post-employment restrictive covenants with LSC are unenforceable because their employment was terminated without cause.   Rather, the Individual Defendants submitted letters of resignation to LSC and subsequently demanded that LSC file Form U5s that reflected that they had "resigned voluntarily."

Similarly, the cases Defendants cite to argue that the duration of the restrictive covenants is too long are clearly distinguishable because they do not involve the attempted enforcement of those covenants against high-level employees with undeniable access to confidential and proprietary computer software/program codes and files.

Nor is there a reason to believe competitors will make LSC's processes and system design obsolete or less valuable in a shorter period of time than provided in the restrictive covenants – regardless of any hardware/storage innovations the Individual Defendants may be able to utilize.   As set forth in Samuel Lek's declarations, the heart of LSC's and ROX's trade secrets are the confidential and proprietary system design, architecture, processes, and selection and prioritization of data that LSC painstakingly created over the past 25 years – design that provides value regardless of the hardware/storage technology used.

Louis and Fowler do not and cannot deny that over the combined 19 years of their employment with LSC they obtained, among other things: (1) the know-how to determine which current and historical customer and trading data to monitor, aggregate, and include in the graphical user interfaces (a form of user interface that allows users to interact with electronic devices through graphical icons and visual indicators, instead of text-based user interfaces) that LSC's employees regularly use; (2) the method LSC uses to internally and efficiently draw on these databases; (3) LSC's strategies to address inconsistencies in messages and reports with market centers; and (4) LSC's solutions designed to address thousands of trades and messages in real time.  Individually and collectively, these trade secrets provide LSC/ROX with a critical market advantage – an advantage that Defendants will necessarily misappropriate in the absence of preliminary injunctive relief.

Most surprising about Defendants' opposition papers is that they provide no testimonial responses to some of the central accusations in Plaintiffs' moving papers.  For example, neither Louis nor Fowler attempt to explain their statement that they are "going to put Lek out of business."  Fowler fails to explain the urgency of setting up a VPN link to his new Workstation on a Saturday, two days before he resigned, or why he sent a text message to LSC's Chief Information and Security Officer upon setting up this VPN link stating that "I can copy all my code to my new machine for when I quit!!"  Similarly, Louis does not explain why his LSC computer contained all of LSC's clearing code, including code in computer languages he rarely, if ever, used.  Finally, neither Louis nor Fowler explain what work they performed (or did not perform) at Volant before the Court entered a temporary restraining order.

Expedited discovery is needed in aid of this motion for preliminary injunction to, among other things, determine what Louis and Fowler have done and intend to do at Volant and to obtain the explanations that the Defendants have yet to provide.  In the interim, the Application for a Temporary Restraining Order and Preliminary Injunction should be granted to enforce the terms of the Non-Compete

and Confidentiality Agreements and to protect Plaintiffs against the irreparable harm they would suffer from the use and disclosure of their trade secrets.

**ARGUMENT**

**I.      PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AND NOTHING IN DEFENDANTS' OPPOSITION SHOULD CONVINCE THIS COURT OTHERWISE.**

In Volant's Memorandum of Law in Opposition to Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction ("Volant Opp."), Volant asserts several arguments in support of its contention that Plaintiffs have not shown a likelihood of success on the merits. However, despite Defendants' attempts to convince this Court otherwise, Plaintiffs have successfully demonstrated a likelihood of success on the merits.

A.  *Plaintiffs Have Adequately Pled the Federal Claims.*

Volant argues that Plaintiffs have not adequately pled their federal claims. Volant Opp. 17. Volant is wrong.  At this preliminary injunction stage, all that is required is that Plaintiffs satisfy a "modest" notice pleading standard. *Savoie v. Merchants Bank*, 84 F.3d 52, 57 (2d Cir. 1996) (concluding that so long as "the federal claim is colorable, a court properly assumes jurisdiction over the subject matter of the suit").  Thus, the basis for federal jurisdiction need only be pled adequately at this stage. Similarly, Plaintiffs are not required to show that each and every claim, including the federal claims, are likely to succeed on the merits in order for this Court to retain jurisdiction. *Monroe v. Hyundai of Manhattan & Westchester*, 2008 WL 4891223 (S.D.N.Y. Nov. 12, 2008) (citing *Bell v. Hood,* 327 U.S. 678, 682 (1946) ("For it is well settled that the 'failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'")).[2]

---

[2] Defendants contend that the DTSA bars preliminary injunctive relief against employment of the Individual Defendants.  However, once the DTSA provides a basis for subject matter jurisdiction, injunctive relief precluding the Individual Defendants' employment is available under Fed. R. Civ. P. 65 and the pendent state law breach of contract and misappropriation claims.  *See* 18 U.S.C. § 1838 (the DTSA does not preempt or displace other remedies under Federal or State law for the misappropriation of trade secrets).

There can be no question that the Plaintiffs' claim under the federal Defend Trade Secrets Act is adequately pled, despite Volant's contentions to the contrary. Volant Opp. 18-24.   Plaintiffs specifically described the Defendants' scheme to misappropriate Plaintiffs' trade secrets for Volant's benefit throughout the fifty-page Complaint and incorporated each paragraph by reference into the DTSA count. ECF No. 1, ¶¶164-179. Further, as this Court already recognized at oral argument (3/8/19 Court Tr. 30:5 - 34:6), Plaintiffs allege in paragraphs 165, 166, and 173 of their Complaint that Volant misappropriated Plaintiffs' trade secrets, and, upon information and belief, their copyrighted material.  Volant argues that this is insufficient to show actual or threatened misappropriation (Volant Opp. 19) but Volant is wrong both because Plaintiffs have met the pleading requirements and because the doctrine of inevitable disclosure applies to Plaintiffs' confidential trade secrets.  Plaintiffs' MOL 40-42; Sections III and IV *infra*.

Volant also argues that Plaintiffs have impermissibly relied upon group pleading. Volant Opp. 20. To meet the notice-pleading requirements of Fed. R. Civ. P. 8(a) (the governing pleading rule in this case), however, the Complaint need only "distinguish between the defendants or plead the allegations with sufficient specificity so that each individual defendant is on notice of the particular claims asserted against it and the grounds for such claims." *Canon U.S.A., Inc. v. F. E. Trading LLC*, No. 2:15-cv-6015(DRH)(AYS), 2017 U.S. Dist. LEXIS 160994, at *20 (E.D.N.Y. Sept. 29, 2017).  Plaintiffs have more than satisfied this pleading standard. *Aghaeepour v. Northern Leasing Sys., Inc.*, No. 14-cv-5449, 2015 WL 7758894, at *4 (S.D.N.Y. Dec. 1, 2015) (allowing group pleading because "the Complaint in the instant case contains numerous allegations pleaded with specificity as to particular defendants"); *Vantone Grp. LLC v. Yangpu NGT Indus. Co.*, No. 13-cv-7639-LTS-MHD, 2015 WL 4040882, at *4 (S.D.N.Y. July 2, 2015) (permitting plaintiff to refer to all 24 defendants collectively in ten of the eleven claims asserted in the complaint, where the plaintiff made "factual allegations that distinguish between the

conduct of the Moving Defendants, listing specific actions taken by each of them."). Contrary to Volant's contentions, Plaintiffs have pled numerous allegations against Volant. *See, e.g.,* ECF No. 1 ¶¶ 157-163.

> B. *Plaintiffs Have Shown a Likelihood of Success on the Merits of their Breach of Contract Claim.*

Volant, along with the Individual Defendants,[3] next argue that Plaintiffs cannot succeed on their breach of contract claims against Louis and Fowler because their non-compete agreements are allegedly overly broad and unreasonable, and because the Individual Defendants were allegedly terminated without cause. Volant Opp. 25; L&F Opp. 17-18.

Defendants' arguments mischaracterize New York law regarding non-competes. Restrictive covenants are regularly enforced by New York courts. *See, e.g., Ticor Title Insurance Co. v. Cohen*, 173 F.3d 63 (2d Cir. 1999). Contrary to the Defendants' arguments, the non-compete agreements here are not overly broad but were created in order to protect Plaintiffs' confidential trade secrets, developed over decades and at a cost of tens of millions of dollars. *See Ayco Co., L.P. v. Frisch*, 795 F. Supp. 2d 193, 210 (N.D.N.Y. 2011) (issuing preliminary injunction where defendants (former employees) went to work for plaintiff's competitor and finding that plaintiff was "threatened with the imminent, irretrievable disclosure to competitors of confidential information, developed over years through significant effort and expense."); *International Business Machines Corp. v. Papermaster*, No. 08-CV-9078 (KMK), 2008 WL 4974508, at *8 (S.D.N.Y. Nov. 21, 2008) (granting plaintiff's motion for preliminary injunction where defendant former executive had worked for plaintiff for over twenty years and had "been inculcated with some of IBM's most sensitive and closely-guarded technical and strategic secrets, [and therefore] it [was] no great leap for the Court to find that [p]laintiff ha[d] met its burden of showing a likelihood of irreparable harm.").

---

[3] Defendants Louis's and Fowler's Memorandum of Law in Opposition to Preliminary Injunction and In Support of Request to Dissolve Temporary Restraining Order is referred to herein as "L&F Opp."

New York courts have routinely upheld non-competes with durations longer than the 18-months at issue here. *See, e.g., Nostrum Pharms., LLC v. Dixit*, No. 13-cv-8718(0CM)(AP), 2014 WL 4370695 (S.D.N.Y. Sept. 2, 2014) (upholding 3-year non-compete); *Ianucci v. Segal Company, Inc.*, No. 06-cv-4720-PKL, 2006 WL 8407380, at *6 (S.D.N.Y. 2006) ("restrictive covenants lasting for three years or longer after an employee's termination have been enforced by New York courts").

The cases cited by Defendants in support of their argument that the 18 month restrictive time period should be reduced (Volant Opp. 25-26, L&F Opp. 17-18) are distinguishable from the facts in the present matter.  In *Estee Lauder Cos. Inc. v. Batra*, the court reduced the restrictive covenant based on evidence that the plaintiff had offered a similar reduction of the non-compete period when the defendant's employment ended. 430 F. Supp. 2d 158, 181-82 (S.D.N.Y. 2006).  In the present case, however, there is no evidence that LSC made such an offer to the Individual Defendants when their employment with LSC ended.  In *EarthWeb, Inc. v. Schlack*, the former employee had no access to code, files, or top executives at the former employer. 71 F. Supp. 2d 299, 305, 313 (S.D.N.Y. 1999). In the present case, however, Louis and Fowler either wrote the applicable codes for LSC or had direct access to those codes written by other LSC employees. ECF No. 9 ¶¶ 36, 43, 46, 50, 82, 85.  *EarthWeb* also involved the infancy of the Internet advertising industry in the late 1990's when the Internet was first becoming widely available to consumers and the industry was beset by rapid change.  There is no such clearing revolution. Lek Reply Dec. ¶ 12.[4]  Finally, Volant's argument is undercut by the fact that Volant included a similar 18-month restrictive covenant in its own employment agreements with Louis and Fowler in January 2019. ECF Nos. 18-4 and 18-5 at 7(b).  Accordingly, the Court should uphold the 18-month non-compete period contained in the Individual Defendants' employment agreements with LSC.

In any event, even if the Court were to find the 18-month period to be excessive here, the Individual Defendants' post-employment non-competition agreements with LSC would still be

---

[4] The Reply Declaration of Samuel Lek, dated March 28, 2019, is submitted herewith ("Lek Reply Dec.").

enforceable, albeit for the shorter duration. *Frantic, LLC v. Konfino*, No. 13 Civ. 4516(AT), 2013 WL 5870211, at *2 (S.D.N.Y. Oct. 30, 2013) ("Courts have the power to 'blue pencil' -- shorten or amend -- restrictive covenants to make them enforceable.").

Volant's second argument regarding the non-competition agreement -- that Louis and Fowler were terminated without cause -- should also be rejected. Volant Opp. 27. On June 11, 2018, both Louis and Fowler voluntarily resigned effective July 13, 2018. ECF No. 9-9. Although Louis and Fowler agreed to remain employees of LSC while other employees were being trained to assume their responsibilities, their employment was ended officially on July 13 (the same date their resignations were to become effective) when LSC learned that Louis had returned his company laptop with all the files deleted in violation of LSC's litigation hold and company policy. ECF No. 9 ¶¶ 98, 111-112.

Over the next few months, Louis and Fowler were engaged in negotiations with LSC arising from their misconduct at LSC while they were dealing with B. Riley. Lek Reply Dec. ¶ 3. Indeed, LSC had written to Louis and Fowler on July 13 to complain of breaches of their Non-Compete and Confidentiality Agreements that had already occurred. ECF No. 24-4. In the course of these negotiations, as counsel for Louis and Fowler had attempted to justify and explain what had occurred, Louis's counsel urged LSC to include on Louis's U5 filings with FINRA that Louis "resigned voluntarily" from his position at LSC as opposed to having been terminated for cause. Lek Reply Dec. ¶ 5, Ex. A. Since Louis and Fowler had tendered their resignation on June 11, 2018, LSC confirmed that Louis and Fowler "resigned voluntarily." Lek Reply Dec. ¶ 6. Accordingly, Defendants cannot now argue that Louis and Fowler were "terminated" after Louis requested that a FINRA filing state that he "resigned voluntarily."

To the extent that the Individual Defendants are not deemed to have "resigned voluntarily," their argument that their termination was without cause cannot be reconciled with the facts adduced in this case. Their dealings with B. Riley had breached their Non-Compete and Confidentiality Agreements,

and LSC expressly notified them of those concerns on the day their access to LSC's offices and computer systems was terminated, warning that litigation would be needed to address the misconduct if Louis and Fowler failed to cooperate. ECF No. 24-4.  Thus, even if the Individual Defendants were not estopped from claiming that they were terminated, any such termination would have been "for cause" based on their scheme with B. Riley.  In either event, the Individual Defendants' non-compete agreements with LSC are not unenforceable based on the circumstances surrounding their departure from LSC. *See In re UFG Int'l, Inc.*, 225 B.R. 51, 55 (S.D.N.Y. 1998) ("[A]n employee's otherwise enforceable restrictive covenant is unenforceable if the employee has been terminated involuntarily, *unless the termination is for cause*.") (emphasis added); *Design Partners, Inc. v. Five Star Electric Corp.*, No. 12-cv-2949(PKC)(VMS), 2017 WL 818364, at *13-14 (E.D.N.Y. Mar. 1, 2017) (termination for cause does not render a non-compete agreement unenforceable and "to hold otherwise would be to permit employees to avoid reasonable non-compete agreements simply by 'creating' cause for their dismissal.").

The Defendants add a novel argument in support of the claim that Plaintiffs' non-compete agreements are not enforceable:  Defendants' contend that they are merely preparing to compete with Plaintiffs' clearing system, and until they come to market with such technology, which will be long after the 18-month restrictive period has run, the non-competition covenant is not breached. L&F Opp. 19-20; Volant Opp. 30-31 (citing *In re Document Techs. Litig.*, 275 F. Supp. 3d 454, 465 (S.D.N.Y. 2017)). Skeptical of this argument, this Court has already likened this theory to permitting North Korea to develop a bomb.  3/14/2019 Court Tr. At 12:11-15.  The Court was right to be skeptical; preparation to compete is permitted under New York law during a non-competition period, but *not* where the preparatory actions include the disclosure of confidential trade secrets as the Defendants will do in this case. *New York Practice Series - Commercial Litigation in New York State Courts § 80:7* (Robert L. Haig ed., 2018) ("[P]reparing to compete during the noncompetition period does not violate a noncompetition

restriction *so long as the employee does not use his or her employer's time, facilities or confidential information to do so.*") (emphasis added).[5]

      The Second Circuit has long recognized that, in technology focused businesses, "sales are inevitably preceded by a long period of engineering" and non-compete agreements were "intended to prevent" a competitor from obtaining an unfair "head start." *De Long Corp. v. Lucas*, 278 F.2d 804, 809 (2d Cir. 1960) (Defendant's engineering studies, designs and drawings for a jack during a two year non-compete period constituted a breach of a non-compete provision.). *De Long* is controlling law and is regularly cited in cases where Defendants attempt to circumvent their non-compete agreements by claiming that their actions were merely preparatory. *See, e.g., Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 453 (S.D.N.Y. 2012) (upholding a breach of contract count where a former employee allegedly transferred jewelry designs to a home computer and prepared to sell jewelry products within the non-compete period).   Further, Plaintiffs cited multiple cases in support of the present motion where preliminary injunctions were granted because of a substantial risk of disclosure before any new product was ready to be placed on the market. Plaintiffs' MOL 40-42 (citing *IBM Corp.*, 2008 WL 4974508 (S.D.N.Y. 2008); *Payment Alliance Intern., Inc. v. Ferreira*, 530 F. Supp. 2d 477 (S.D.N.Y. 2007); *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624 (E.D.N.Y. 1996); and *Continental Grp., Inc. v. Kinsley*, 422 F. Supp. 838 (D. Conn. 1976)). Where there are allegations and evidence that the Defendants will use Plaintiffs' confidential information during Louis and Fowler's non-compete period unless enjoined from doing so, Defendants' claim that their actions to date (as well as their intended future actions) are merely "preparatory" is irrelevant.

---

[5] It should be noted that Fowler purchased his new, upgraded computer system only a week or two after both Louis and Fowler had already been offered positions to build a clearing system at B. Riley. ECF No. 25, ¶¶15, 22; ECF No. 26, ¶ 31.  Given Fowler's comment about "copy[ing] all my code to my new machine for when I quit," the clandestine "Operation Secret Octopus," and the fact that both Louis and Fowler have subsequently made affirmative misrepresentations in their employment agreements with Volant (*see* ECF Nos. 18-4 and 18-5, Section 10(d))  Plaintiffs should be  entitled to test the circumstances of Louis and Fowler's employment with Volant through expedited discovery while the injunction remains in place.

## II.   PLAINTIFFS ARE NOT PRECLUDED FROM SEEKING PRELIMINARY INJUNCTIVE RELIEF BASED ON THE TIMING OF THEIR APPLICATION.

Volant contends that Plaintiffs' supposed delay in seeking a temporary restraining order is fatal to their application. Volant Opp. 29-30. However, the cases cited by Volant in support of this argument are inapposite as each involved delays that were far in excess of the time period at issue in the present case. *Poon v. Roomorama,* LLC, 2009 WL 3762115, at *6 (S.D.N.Y. Nov. 10, 2009) (unexplained five month delay after negotiations ended); *Citibank N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) (more than 10 weeks after direct notice of plans and more than 9 months after notice through the press); *Coscarelli v. ESquared Hosp. LLC*, 2019 WL 400586, at *10 (S.D.N.Y. Jan. 31, 2019) (at least 8 month delay). Volant also inexplicably cites to *Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144-45 (2d Cir. 2005), where the Second Circuit held that a 7 month delay did *not* preclude a preliminary injunction where the Plaintiff was not certain of the infringing activity and the Plaintiff attempted to resolve the situation through negotiations with Defendant's counsel prior to making the application.

In the present case, Plaintiffs sought a temporary restraining order less than 8 weeks after Volant's counsel first notified Mr. Lek that Volant was planning to hire Louis and Fowler and it is uncontested that the parties engaged in numerous settlement discussions during that time period in an attempt to avoid litigation. ECF No. 9, ¶¶ 119-120, ECF No. 9-10; ECF Nos. 18-6 and 18-7. Further, Plaintiffs were uncertain as to whether Louis and Fowler were in fact working at Volant as Volant's counsel's letter of February 5, 2019 states, "Volant *intends to proceed* with hiring Nicolas Louis and Jon Fowler, and plans to begin the onboarding process tomorrow, February 6, 2019." ECF No. 18-6 (emphasis added). It was not until the beginning of March of 2019 that Plaintiffs – through the FINRA Broker Check – were able to confirm that Fowler had actually begun work at Volant. ECF No. 9, ¶ 123; 3/8/19 Court Tr. 17:12-24. Accordingly, Volant's delay argument is without merit.

## III.    PLAINTIFFS DO NOT SEEK A MANDATORY INJUNCTION, BUT, EVEN IF THEY DID, THEY MEET THE REQUISITE STANDARD.

As a threshold matter, Volant argues that the injunction Plaintiffs seek is mandatory in that Plaintiffs seek to change the status quo, thereby requiring a higher standard.  Volant Opp. 16.  Volant is wrong.  The "last actual, peaceable uncontested status" was not *after* Louis and Fowler started working at Volant, as Volant suggests, but rather *before* the Individual Defendants began their employment at Volant. Volant Opp. 17, 23; *Muhammad v. Jenkins*, No. 12-cv-8525 CM, 2013 WL 5225573, at *11 (S.D.N.Y. Sept. 13, 2013).  Louis, Fowler, and Volant were well aware that Volant's hiring of the Former Employees would be contested:  The second addendum to the Individual Defendants' employment agreements with Volant not only make it clear that the Defendants anticipated this litigation, it allocated the costs of the defense of this litigation amongst them. ECF Nos. 18-4 and 18-5.  Furthermore, Volant's counsel acknowledged the contested status that would follow from Volant's hiring of the Individual Defendants in the letter he wrote to LSC's counsel before "onboarding" Louis and Fowler, in which he referred to "having to defeat any request for injunctive relief." ECF No. 18-6.  Thus, Plaintiffs do not seek a "mandatory" injunction, and the higher standard does not apply.

Plaintiffs have met the higher standard in any event, given the Individual Defendants' pattern of attempts to misappropriate Plaintiffs trade secrets (ECF No. 9 ¶¶ 90-91, 101, 119), their bold statement that they "ARE the clearing part of Lek," (*id*. ¶ 90), the fact that they have spent the majority of their careers learning only Lek-based clearing technology (*id*. ¶ 85), and the reality that Volant has now hired them both to build precisely the same platform -- clearing technology in the securities industry -- that they developed together with Plaintiffs (*id*. ¶ 119).

## IV.    THE INEVITABLE DISCLOSURE DOCTRINE IS APPLICABLE TO THE FACTS OF THIS CASE.

In its opposition papers, Volant concedes that "[c]ourts have resorted to the [inevitable disclosure] doctrine only in instances where there is evidence of actual misappropriation of trade secrets, or *where the*

*plaintiff asserts a claim for breach of a non-compete agreement*." Volant Opp. 31-32 (citing *Janus et Cie v. Kahnke*, 2013 WL 5405543, at *2 (S.D.N.Y. Aug 29, 2013) (emphasis added)).   Indeed, the circumstances in this case  only highlight the reason the doctrine exists.  Nevertheless, Volant attempts to argue that the inevitable disclosure doctrine is inapplicable here by citing to cases either where no non-compete agreements were in place or where the Plaintiff failed to identify a protectable trade secret. *See Marietta Corp. v. Fairhurst*, 754 N.Y.S.2d 62, 65 (3d Dep't 2003) (non-compete agreement was not in effect and plaintiff did not assert that information sought to be protected was a trade secret); *Janus*, 2013 WL 5405543, at *2 (no non-compete agreement at issue); *Silipos, Inc. v. Bickel*, 2006 WL 2265055, at *4 (S.D.N.Y. Aug. 8, 2006) (general marketing and pricing information does not qualify as a trade secret); *IBM v. Visentin*, 2011 WL 672025, at *11 (S.D.N.Y. Feb 16, 2011) (plaintiff unable to identify information in defendant's possession that could cause competitive harm).

In contrast to the cases cited by Volant, the Complaint describes the Plaintiffs' trade secrets – including the Plaintiffs' stock and options clearing system and individual LSC applications – in great detail.  The Complaint further describes Louis's and Fowler's extensive access to and knowledge about those trade secrets, and alleges that Louis and Fowler are going to use those trade secrets in breach of their non-compete agreements with Plaintiffs, allegations that are buttressed by evidence showing that Volant hired Louis as Director of Clearing.  Volant's suggestion that it has set forth adequate "safeguards" to ensure that the Plaintiffs' confidential information will not be disclosed (Volant Opp. 32) is unavailing. This is because its "safeguards" simply cannot prevent the Individual Defendants from using the trade secret information they learned from their work at LSC in connection with their nearly identical jobs with Volant.  Volant's "safeguards" argument fails to appreciate that Louis's and Fowler's only knowledge of clearing systems is what they learned from LSC's and ROX's proprietary clearing systems, knowledge that will inevitably be disclosed by Louis and Fowler if they are permitted to create a clearing system for

Volant. *See Lumex*, 919 F. Supp. 624, 631 (E.D.N.Y. 1996) (Even where a former employee wrote to new employer that he did not want to discuss trade secrets of the former employer, and with good faith on the part of the new employer, the former employer's trade secrets may still be revealed through inevitable disclosure.).[6]

## V.   THE BALANCE OF THE EQUITIES DOES NOT FAVOR DEFENDANTS.

Defendants' arguments do nothing to allay the threat of their use of Plaintiffs' confidential trade secrets and copyrighted materials for their own benefit in contravention of the Individual Defendants' enforceable restrictive covenants.  Their opposition papers only confirm that the Individual Defendants are ready, willing, and able to take and recreate Plaintiffs' clearing system for Volant.  A preliminary injunction, therefore, is the only remedy whereby the Court can preserve the status quo and prevent further irreparable harm to Plaintiffs' business.

In addition, the balance of the equities tips heavily against Louis and Fowler here given, among other things (a) their clandestine scheme code-named "Operation Secret Octopus" which was intended to put LSC out of business (ECF No. 9 ¶ 90), (b) their having taken documents and information belonging to LSC at the time they resigned their employment with LSC (*id.* ¶¶ 103-106), and (c) their having made at least the following two significant false statements in their employment agreements with Volant: (1) "I am not subject to any employment agreement, non-competition covenant, or other restriction that prohibits or limits me from performing my duties to VOLANT" (ECF Nos. 18-4 and 18-5 at §2) and (2) "I have not taken, and do not have access to or the ability to retrieve, any property belonging to any of my previous employers,…" (*id.* at §10(d)(i)).  Defendants have not, because they cannot, cite to any case where a Court simply looks the other way in light of repeated misrepresentations by the Individual

---

[6] Furthermore, Volant's argument as to the unenforceability of Louis's and Fowler's acknowledgment in their non-compete agreements that any breach would cause irreparable harm (Volant Opp. 32) is undercut by the fact that Volant included similar "irreparable harm" language in its employment agreements with Louis and Fowler in January. ECF Nos. 18-4 and 18-5 at 17(c).

Defendants and a reasonable restrictive covenant designed to protect Plaintiffs from the very disclosure at issue here. ECF Nos. 18-4 and 18-5.

The balance of the equities also tip heavily against Volant here because, among other things, Volant was admittedly aware of the existence of the Individual Defendants' post-employment restrictive covenants with LSC at the time of its agreements with the Individual Defendants (ECF No. 9 ¶ 119) which, among other things, included false representations by the Individual Defendants to the effect that they are "not subject to any employment agreement, non-competition covenant, or other restriction that prohibits or limits me from performing my duties to VOLANT" (ECF Nos. 18-4 and 18-5 at §2).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion to continue the temporary restraining order, for a preliminary injunction and expedited discovery in aid of their preliminary injunction application, and award such other relief as it deems just and proper.

Dated: New York, New York
March 28, 2019

DENTONS US LLP

By: /s Brian S. Cousin
    Brian S. Cousin
    Mark D. Meredith
    Christina S. Dumitrescu
    1221 Avenue of the Americas
    New York, New York 10025
    Tel: (212) 768-6700
    Fax: (212) 768-6800
    Brian.Cousin@dentons.com
    Mark.Meredith@dentons.com
    Christina.Dumitrescu@dentons.com
    *Attorneys for Plaintiffs*

    TANNENBAUM HELPERN SYRACUSE &
    HIRSCHTRITT LLP
    Paul D. Sarkozi

15

Carl F. Regelmann
Richard W. Trotter
900 Third Avenue
New York, New York 10022
Tel: (212) 508-6700
Fax: (212) 371-1084
Sarkozi@thsh.com
Regelmann@thsh.com
Trotter@thsh.com
*Attorneys for Plaintiffs*