大成 DENTONS

**Brian S. Cousin**
Partner

brian.cousin@dentons.com
D   +1 212 398 5776

Dentons US LLP
1221 Avenue of the Americas
New York, NY  10020-1089
United States

dentons.com

Via ECF

April 8, 2019

Honorable Richard M. Berman
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

Re:   *Lek Securities Corporation, et al. v. Louis, et al.*
      Case 1:19-cv-02142-RMB-BCM

Dear Judge Berman:

  Pursuant to the Court's April 4, 2019 order (ECF No. 48), plaintiffs respectfully submit this letter brief in support of their position regarding the appropriate bond amount necessary to secure the temporary restraining order ("TRO").  As set forth below, given plaintiffs' strong likelihood of success on the merits in enforcing the terms of the non-compete agreements and the expectation that the trial will be held well within the 18-month tefrm of those restrictive covenants, plaintiffs believe that the $10,000 bond currently in place is entirely appropriate and should not be increased.

  There is unequivocal evidence that the defendants Nicolas Louis ("Louis") and Jonathan Fowler ("Fowler") (together, the "Individual Defendants") worked for the plaintiffs' competitor on a clearing system in breach of their non-compete agreements within about seven months after their employment with Lek Securities Corp. ("LSC") ended and that the corporate defendants were fully aware of the Individual Defendants' ongoing restrictive covenants with LSC when hiring them.  The bond requirement under Rule 65(c) is only required to "pay the costs and damages sustained by any party found to have been *wrongfully* enjoined or restrained." Fed. R. Civ. P. 65(c) (emphasis added).  This Court's enforcement of the non-compete agreements which, according to their terms, do not expire until at least January 2020, has not been "wrongful" based on the relevant case law and evidence provided to the Court in the fully briefed motion for TRO and the admissions by the defendants in their opposition papers.

  It is well-settled that this Court has "wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm." *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997).  In setting the amount of a bond, "[t]he Court should consider both the likelihood of the enjoined party prevailing on the merits and the harm suffered by the enjoined party." *Shamrock Power Sales, LLC v. Scherer*, 12-CV-8959, 2016 WL 6102370, at *10 (S.D.N.Y. Oct. 18, 2016).  Courts regularly eliminate the Rule 65(c) bond requirement completely or require only a minimal bond where the movant has demonstrated a high likelihood of success. *See N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 345 (S.D.N.Y.2010) (court did not require a bond where plaintiff's likelihood of success on trademark violation claim was overwhelming); *Eastman Kodak Co. v. Collins Ink Corp.*, 821 F. Supp. 2d 582, 590 (W.D.N.Y. 2011)

**Hamilton Harrison & Mathews** ► **Mardemootoo Balgobin** ► **HPRP** ► **Zain & Co.** ► **Delany Law** ► **Dinner Martin** ► **Maclay Murray & Spens** ►
**Gallo Barrios Pickmann** ► **Muñoz** ► **Cardenas & Cardenas** ► **Lopez Velarde** ► **Rodyk** ► **Boekel** ► **OPF Partners** ► 大成

(in holding that no bond was required where defendant "flouted the terms of the contract," the Court stated: "[t]he greater plaintiff's likelihood of success on the merits, the lower the probability that an injunction in plaintiff's favor will later be determined to have been issued in error"); *Rex Med. L.P. v. Angiotech Pharm. (US), Inc.*, 754 F. Supp. 2d 616, 627 (S.D.N.Y. 2010) (where a medical device distributor was enjoined from unilaterally terminating a contract and sought a $5 million bond to cover its anticipated damages if it prevailed, the court estimated its chances of prevailing at less than 5% and ordered a bond of $100,000); *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 203 (E.D.N.Y. 2013) (where a former franchisee was enjoined from operating a competing restaurant and sought a $185,810.50 bond to cover its anticipated rent damages if it prevailed, the court noted that the plaintiffs "are almost all but likely to succeed on the merits" and ordered a bond of $20,000).

For the reasons addressed in the plaintiffs' moving and reply briefs, plaintiffs have shown overwhelming evidence that the plaintiffs are -- at a minimum -- likely to succeed on the merits of their breach of contract claim for the Individual Defendants' breach of their non-compete agreements. ECF Nos. 7 at 32-37; 44 at 6-10. Consistent with a finding that the plaintiffs are likely to succeed on the merits of at least the breach of contract claim, the Court ordered that the Individual Defendants be enjoined from working at Volant, and has not disturbed that initial ruling after affording the defendants an opportunity to submit opposition papers and present oral argument. Given this record, there is very little risk that the Court will ultimately conclude that the defendants were *wrongfully* enjoined here and, accordingly, little risk that the defendants would be entitled to any damages secured by a bond under Rule 65(c).

The Individual Defendants' contention that they are unfairly "bear[ing] the burden of this litigation" is a symptom of their own making. 4/1/19 Transcript at 13:9. After their employment with LSC ended, the Individual Defendants were free to pursue employment with a myriad of companies in the securities industry and/or with companies in other industries that would not have violated the terms of their non-compete agreements and for which they were qualified. Instead, through "Operation Secret Octopus," they repeatedly attempted to work on a clearing system for a competitor of the plaintiffs that is clearly prohibited by their non-compete agreements. ECF No. 9 ¶90. Indeed, the Individual Defendants' counsel admitted in court that the clearing system Volant intends to create could compete with LSC: "MR. LANDY: [The Individual Defendants] are building a system for Volant that would have the ability to compete with one aspect of what Lek does." 3/14/19 Transcript: 13:24-25. This Court has not enjoined the Individual Defendants from working and earning an income as the defendants would have this Court believe; rather, it has enjoined them from working in a capacity that is a blatant breach of their non-compete agreements.

Furthermore, to the extent that Volant has successfully shifted a great deal of its legal costs in this matter onto the Individual Defendants through onerous employment agreement terms (ECF Nos. 18-4 & 18-5 at Addendum 2 at §1(d)), the Individual Defendants *chose* to take on those obligations to Volant knowing full well that the plaintiffs were likely to enforce their non-compete agreements for engaging in ostensibly the same breach they previously attempted with another one of LSC's competitors, B. Riley Capital Management, LLC. ECF Nos. 24-4; 25 at ¶27; 26 at ¶44. In any event, a Rule 65(c) bond does not generally secure defendants' attorneys' fees incurred in litigating the TRO and there is no compelling reason for the Court to make an exception to that general rule here. *See Nokia Corp. v. Interdigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011) ("Consistent with [the] general [American] rule against fee-shifting, it has long been established that a prevailing party may not generally collect as damages against an injunction bond attorneys' fees expended in litigating the injunction"). Thus, the Individual Defendants cannot now complain that they are unfairly burdened

by significant litigation costs and a lack of income when this dispute, including the plaintiffs' need for preliminary injunctive relief, was fully anticipated and is wholly a product of their own making.

Similarly, Volant cannot persuasively claim that the TRO is causing it to be unfairly damaged. This Court's TRO does not currently prevent Volant from working on a clearing system that competes with the plaintiffs' systems. By Volant's own admissions, it has a team of employees that can continue to work on the development of Volant's planned clearing system. ECF No. 20 at ¶¶ 23-25. Other than Louis and Fowler, Volant's employees are not restricted by the TRO, assuming that they are -- in fact -- *not* using any of plaintiffs' trade secrets or confidential information. Volant has consistently claimed in this litigation that, prior to the issuance of the TRO, it had already excluded Louis and Fowler from certain preparatory work for its clearing system development such that there is work that Volant can plainly be doing to advance the creation of its clearing system without involving the Individual Defendants. ECF No. 20 at ¶ 24.

Volant further claims that it will take at least 15-18 months before it is able to bring a new clearing system to market under the best case scenario. ECF No. 20 at ¶ 15. In light of these claims by Volant, any alleged delay damage defendants may suffer in connection with its attempted creation of an entirely new and complex product -- that is at least a year and a half away from realization -- is completely speculative. *Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, 441 F. Supp. 2d 552, 566 (S.D.N.Y. 2006) ("In fixing the amount of security required [under Rule 65(c)], a court is not required to order security in respect of claimed economic damages that are no more than speculative"), *aff'd*, 246 F. App'x 73 (2d Cir. 2007).

Volant repeatedly -- and somewhat surprisingly -- relied on *Free Country Ltd. v. Drennan*, 235 F. Supp. 3d 559 (S.D.N.Y. 2016) in opposition to the plaintiffs' motion for injunctive relief. ECF No. 21 at 18-19; 3/14/19 Transcript at 23:11-23. In *Free Country*, Judge Rakoff *granted* the motion for a TRO, ordered expedited discovery, and held an evidentiary hearing. *Free Country*, 235 F. Supp. 3d at 563, 570. Upon review of the ECF filing in *Free Country*, the plaintiff was required to post a $5,000 bond. Case 1:16-cv-08746-JSR ECF No. 9.

Accordingly, in light of the expedited discovery ordered by Magistrate Judge Moses at our conference on April 4, 2019, which requires completion of all discovery by July 1, 2019 in anticipation of a July trial on the merits before Your Honor, which is six months before the earliest time that the non-competes would expire on their terms, and plaintiffs' strong likelihood of success on the merits, plaintiffs respectfully submit that the $10,000 bond amount is more than appropriate and proportionate to the speculative and self-inflicted damages alleged by the defendants.

Respectfully submitted,

/s Brian S. Cousin
Brian S. Cousin
Paul D. Sarkozi
Tannenbaum Helpern Syracuse & Hirschtritt LLP

cc: Howard Schiffman, Esq. (via email and ECF)
Robert Landy, Esq. (via email and ECF)