UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
LEK SECURITIES CORPORATION and                     Case No.: 19-CV-02142(RMB/BCM)
ROX SYSTEMS, INC.
                                        *Plaintiffs*,

                        – against –                                      **ANSWER**

NICOLAS LOUIS, JONATHAN FOWLER, VOLANT
HOLDING, LLC D/B/A VOLANT TRADING,
VOLANT
TRADING, LLC, VOLANT LIQUIDITY, LLC, AND
VOLANT EXECUTION, LLC

                                        *Defendants*.
------------------------------------------------------------------------x


### ANSWER OF DEFENDANTS NICOLAS LOUIS AND JONATHAN FOWLER


        Defendants Nicolas Louis ("Louis") and Jonathan Fowler ("Fowler") (collectively, the

"Individual Defendants"), by and through their undersigned attorneys, respond, state, and allege

as follows to the Complaint asserted by Plaintiffs LEK SECURITIES CORPORATION ("LSC") and ROX

Systems, Inc. ("ROX") (collectively "Plaintiffs").  To the extent not specifically admitted below,

each factual assertion by Plaintiffs is denied.  To the extent that the headings and non-numbered

statements in the Complaint contain any averments, the Individual Defendants deny each and

every such averment.

        1.        The Individual Defendants deny the allegations in paragraph 1.

        2.        The Individual Defendants deny all allegations contained in paragraph 2, except

admit that Fowler and Louis accepted employment positions at B. Riley that were scheduled to

commence following their termination from LSC in 2018, and admit that a document exists

created by Louis and Fowler with the file name "Operation Secret Octopus," but deny the

misleading characterizations attributed to that document, and aver that the file was a four-page general memorandum with information on the clearing industry, a summary of Louis's and Fowler's professional backgrounds, and a basic timeline to create self-clearing capabilities at B. Riley.

3.       The Individual Defendants deny the allegations in paragraph 3, except admit that in mid-2018 they submitted resignations to LSC, and received an offer of employment from B. Riley, but that the offer was rescinded following plaintiffs' unwarranted and aggressive behavior. The Individual Defendants further aver that Fowler and Louis voluntarily produced emails to LSC, including "Operation Secret Octopus", which was a four-page general memorandum with information on the clearing industry, a summary of Louis's and Fowler's professional backgrounds, and a basic timeline to create self-clearing capabilities at B. Riley.

4.       The Individuals Defendants deny the allegations in paragraph 4, and specifically deny the allegations of purported conversations between Plaintiffs and third-parties for lack of knowledge and information to form a belief about the truth of the allegations.

5.       The Individual Defendants deny the allegations in paragraph 5, and specifically deny the allegations of purported conversations between Plaintiffs and third-parties for lack of knowledge and information to form a belief about the truth of the allegations, except admit that Volant extended offers of employment to Fowler and Louis, and Fowler and Louis began employment with Volant on February 6, 2019 and worked for Volant for approximately one month prior to entry of the Temporary Restraining Order in this action.

6.       The Individual Defendants admit that LSC is a broker-dealer, but otherwise deny the allegations in paragraph 6 for lack of knowledge and information to form a belief about the truth of the allegations. The Individual Defendants object to Plaintiffs attempt to set forth the

motives of unrelated third parties, and further aver that the "proprietary technology" referred to by Plaintiffs lacks any value outside of Plaintiffs' own enterprises.

7.      The Individual Defendants deny the allegations in paragraph 7 for lack of knowledge and information to form a belief about the truth of the allegations related to Plaintiffs' enterprises. The Individual Defendants further aver that the technology referred to by Plaintiffs lacks any value outside of Plaintiffs' own enterprises.

8.      The Individual Defendants deny the allegations in paragraph 8 for lack of knowledge and information to form a belief about the truth of the allegations related to Plaintiffs' enterprises, except admit that Fowler participated in the development of the "Dashboard" application. The Individual Defendants further aver that the technology referred to by Plaintiffs lacks any value outside of Plaintiffs' own enterprises.

9.      The Individual Defendants deny the allegations in paragraph 9 for lack of knowledge and information to form a belief about the truth of the allegations related to Plaintiffs' enterprises, except expressly deny that LSC "created entirely novel processes to manage its clearing system."  Clearing is highly regulated and all clearing firms perform largely-identical operations in a similar manner, even if they use certain customized technologies. The Individual Defendants further aver that the technology referred to by Plaintiffs lacks any value outside of Plaintiffs' own enterprises.

10.     Paragraph 10 contains speculation and legal conclusions to which no response is necessary. To the extent paragraph 10 contains factual allegations, the Individual Defendants deny the allegations in paragraph 10, except admit that the document referred to as the "Confidential Memorandum" exists, and refer to the full document for the complete language contained therein. The Individual Defendants deny that Plaintiffs will be damaged in any manner

by the Individual Defendants employment at Volant, deny that any alleged trade secrets of Plaintiffs could or would be used at Volant, and further aver that any technology created by Plaintiffs, even if provided to Volant, could be of no value in building a new clearing system because it is specifically designed for LSC and has no value outside of the enterprise.

11.     Paragraph 11 asserts legal conclusions to which no response is necessary.

12.     The Individual Defendants solely upon information and belief admit the allegations in paragraph 12.

13.     The Individual Defendants solely upon information and belief admit the allegations in paragraph 13.

14.     The Individual Defendants admit the allegations in paragraph 14.

15.     Fowler's correct address is 1095 East Linden Ave., Richmond Heights, MO 63117. The Individual Defendants deny that Fowler currently resides at the address contained in paragraph 15, and acknowledge the existence of a non-compete and confidentiality agreement and refer to the agreement for a complete recitation of its terms. The assertion in paragraph 15 that Fowler "agreed to the exclusive jurisdiction of the courts of New York" is a legal conclusion to which no response is necessary, and the Individual Defendants otherwise deny this allegation for lack of knowledge and information sufficient to form a belief as to the truth thereof.

16.     The Individual Defendants deny the allegations contained in paragraph 16 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

17.      The Individual Defendants deny the allegations contained in paragraph 17 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

18.     The Individual Defendants deny the allegations contained in paragraph 18 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

19.    The Individual Defendants deny the allegations contained in paragraph 19 for lack of knowledge or information sufficient to form a belief as to the truth thereof.

20.    Paragraph 20 asserts legal conclusions to which no response is necessary.

21.    Paragraph 21 asserts legal conclusions to which no response is necessary.

22.    Paragraph 22 asserts legal conclusions to which no response is necessary.

23.    The assertion in paragraph 23 that Fowler "agreed to the exclusive jurisdiction of this district" is a legal conclusion to which no response is necessary, and the Individual Defendants refer this Court to the document alleged in Paragraph 23 for a full recitation of its contents.

24.    Paragraph 24 asserts legal conclusions to which no response is necessary.

25.    Paragraph 25 asserts legal conclusions to which no response is necessary.

26.    Paragraph 26 asserts legal conclusions to which no response is necessary.

27.    Paragraph 27 asserts legal conclusions to which no response is necessary.

28.    The Individual Defendants solely upon information and belief admit the allegations in paragraph 28, except object to the characterization of purchase and sale of stocks and options as "sophisticated financial transactions."

29.    The Individual Defendants deny the allegations in paragraph 29 for lack of knowledge and information to form a belief about the truth of the allegations.  The Individual Defendants have no information regarding Plaintiffs' business beyond July 13, 2018.

30.    The Individual Defendants deny the allegations in paragraph 30 for lack of knowledge and information to form a belief about the truth of the allegations.  The Individual Defendants aver that the technology described therein lacks any value outside of Plaintiffs' own enterprises.

31.    The Individual Defendants deny the allegations in paragraph 31 for lack of knowledge and information to form a belief about the truth of the allegations, and expressly deny that Plaintiffs' systems are "confidential and proprietary and give LSC a competitive advantage over its competitors in the broker-dealer industry."

32.    The Individual Defendants deny the allegations in paragraph 32 for lack of knowledge and information to form a belief about the truth of the allegations. The Individual Defendants aver that the technology described therein lacks any value outside of Plaintiffs' own enterprises, and further aver that Plaintiffs' systems permit LSC to provide clearing services to customers, but do not provide any competitive advantage.  On information and belief, LSC competes primarily on customer service and a willingness to accept customers that other clearing firms deem risky.  LSC is neither the least nor the most expensive provider of clearing services.

33.    The Individual Defendants deny the allegations in paragraph 33, and aver that no competitor could use technology obtained from Plaintiffs to build a more efficient system.  Any system built on current technologies as opposed to the older technologies utilized by LSC would be more efficient than the system employed by LSC.

34.    The Individual Defendants deny the allegations in paragraph 34 for lack of knowledge and information to form a belief about the truth of the allegations.

35.    The Individual Defendants deny the allegations in paragraph 35 for lack of knowledge and information to form a belief about the truth of the allegations.

36.    The Individual Defendants deny the allegations in paragraph 36 for lack of knowledge and information to form a belief about the truth of the allegations.

37.    The Individual Defendants deny the allegations in paragraph 37 for lack of knowledge and information to form a belief about the truth of the allegations.

38.     The Individual Defendants deny the allegations in paragraph 38 for lack of knowledge and information to form a belief about the truth of the allegations.

39.     The Individual Defendants deny the allegations in paragraph 39 for lack of knowledge and information to form a belief about the truth of the allegations.

40.     The Individual Defendants solely upon information and belief admit the allegations in paragraph 40.

41.     The Individual Defendants deny the allegations in paragraph 41 for lack of knowledge and information to form a belief about the truth of the allegations, except that Individual Defendants deny that LSC has a "highly unique proprietary clearing system."

42.     The Individual Defendants deny the allegations in paragraph 42 for lack of knowledge and information to form a belief about the truth of the allegations.

43.     The Individual Defendants deny the allegations in paragraph 43 for lack of knowledge and information to form a belief about the truth of the allegations, except that Individual Defendants deny that LSC has any copyrights associated with this clearing system.

44.     The Individual Defendants deny the allegations in paragraph 44 for lack of knowledge and information to form a belief about the truth of the allegations.

45.     The Individual Defendants deny the allegations in paragraph 45 for lack of knowledge and information to form a belief about the truth of the allegations.

46.     The Individual Defendants deny the allegations in paragraph 46 for lack of knowledge and information to form a belief about the truth of the allegations.  The Individual Defendants aver that the clearing technology system employed by LSC lacks any value outside of Plaintiffs' own enterprises and provided it no competitive advantage beyond the ability to participate in the clearing industry.

47.     The Individual Defendants deny the allegations in paragraph 47 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that all clearing firms have systems similar to those listed in paragraph 47.

48.     The Individual Defendants deny the allegations in paragraph 48, which is an inaccurate description of LSC's trading operations, and aver that the processes discussed therein are unrelated to LSC's clearing business.

49.     The Individual Defendants deny the allegations in paragraph 49, which is an inaccurate description of LSC's trading operations. Further, the Individual Defendants emphatically deny that "RTR…can handle over a million messages per second," and otherwise aver that the processes discussed paragraph 49 are unrelated to LSC's clearing business.

50.     The Individual Defendants deny the allegations in paragraph 50 for lack of knowledge and information to form a belief about the truth of the allegations, except admit that Mr. Gregg designed the systems used by LSC in its trading operations, and aver that the processes discussed therein are unrelated to LSC's clearing business.

51.     The Individual Defendants deny the allegations in paragraph 51 for lack of knowledge and information to form a belief about the truth of the allegations.

52.     The Individual Defendants admit the allegations in paragraph 52.

53.     The Individual Defendants deny the allegations in paragraph 53 as an inaccurate description of LSC's systems, and aver that all clearing firms have technologies or processes that accomplish the same tasks as the systems described in paragraph 53 in a similar, though not identical, manner.

54.      The Individual Defendants deny the allegations in paragraph 54 as an inaccurate description of LSC's systems.

55.     The Individual Defendants deny the allegations in paragraph 55.

56.     The Individual Defendants deny the allegations in paragraph 56 as an inaccurate description of LSC's systems.

57.     The Individual Defendants admit the allegations in paragraph 57, except aver that all clearing firms have technologies or processes that accomplish the same tasks as the systems described in paragraph 57 in a similar, though not identical, manner.

58.     The Individual Defendants deny the allegations in paragraph 58, and aver that LSC utilizes the Encore system.

59.     The Individual Defendants deny the allegations in paragraph 59, and aver that all clearing firms have technologies or processes that accomplish the same efficiencies as Dashboard.

60.     The Individual Defendants deny the allegations in paragraph 60 as an inaccurate description of LSC's systems.

61.     The Individual Defendants deny the allegations in paragraph 61 as an inaccurate description of LSC's systems.

62.     The Individual Defendants deny the allegations in paragraph 62 as an inaccurate description of LSC's systems.

63.     The Individual Defendants deny the allegations in paragraph 63 as an inaccurate description of LSC's systems.

64.     The Individual Defendants deny the allegations in paragraph 64, and aver that all clearing firms have technologies or processes that accomplish the same tasks as the systems described in paragraph 64 in a similar, though not identical, manner.

65.    The Individual Defendants deny the allegations in paragraph 65 for lack of knowledge and information to form a belief about the truth of the allegations.

66.    The Individual Defendants deny the allegations in paragraph 66 as an inaccurate description of LSC's systems.

67.    The Individual Defendants deny the allegations in paragraph 67, and aver that all clearing firms have technologies or processes that accomplish the same tasks as the systems described in paragraph 67 in a similar, though not identical, manner.

68.    The Individual Defendants deny the allegations in paragraph 68 as an inaccurate description of LSC's systems.

69.    The Individual Defendants deny the allegations in paragraph 69 as an inaccurate description of LSC's system.

70.    The Individual Defendants deny the allegations in paragraph 70, except admit that "[o]ther SWIFT interfaces are commercially available."  The Individual Defendants aver that other SWIFT interfaces may be licensed for as little as $300 per month with professional support and exist free of charge from the community, and are far superior to and more efficient than LSC's system, and further aver that LSC's system only has value to LSC.

71.    The Individual Defendants deny the allegations in paragraph 71 for lack of knowledge and information to form a belief about the truth of the allegations, except admit that Louis developed "Wire Management" over the course of several years, and that the development process started in 2010. The Individual Defendants further aver that "Wire Management" and "SWIFT dynamic link library" are distinct interfaces, and that they have no value outside of Plaintiffs' enterprise.

10

72.     The Individual Defendants deny the allegations in paragraph 72 for lack of knowledge and information to form a belief about the truth of the allegations, except admit that "Broker-dealers are required to collect detailed information concerning its customers and keep the information current," and that "Brokers must have detailed information on file concerning the identity of a customer and the customer's investment objectives."

73.     The Individual Defendants deny the allegations in paragraph 73 for lack of knowledge and information to form a belief about the truth of the allegations.

74.     The Individual Defendants deny the allegations in paragraph 74 as an inaccurate description of LSC's systems.

75.     The Individual Defendants deny the allegations in paragraph 75 as an inaccurate description of LSC's systems and further deny that LSC's clearing system is "proprietary" and deny that they are "experts in rewriting LSC Code."

76.     The Individual Defendants deny the allegations in paragraph 76 as an inaccurate description of LSC's systems, and deny that "almost all broker-dealers subscribe to…Loanet."

77.     The Individual Defendants deny the allegations in paragraph 77.

78.     The Individual Defendants deny the allegations in paragraph 78 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that none of Plaintiffs' copyrights relate to their clearing business.

79.     The Individual Defendants deny the allegations in paragraph 79 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that ROX has never licensed any technology for use in clearing.

80.     The Individual Defendants deny the allegations in paragraph 80, except admit, on information and belief alone, that Volant holds no licenses from ROX.

81.     The Individual Defendants deny the allegations in paragraph 81 for lack of knowledge and information to form a belief about the truth of the allegations, and refer to any agreements alleged therein for a full and accurate recitation of their contents.

82.     The Individual Defendants deny the allegations in paragraph 82 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that while individual passwords are regularly changed, nearly all LSC operational employees access the LekSec network using administrator ("admin") credentials due to the limited functionality and permissions given to individual logins, and further aver that the admin password is never changed.

83.     The Individual Defendants deny the allegations in paragraph 83 for lack of knowledge and information to form a belief as to the truth of the allegations.

84.     The Individual Defendants deny the allegations in paragraph 84.  The Individual Defendants aver that every user of LSC's private network, once connected, has virtually unlimited access to any machine on the network. They further aver that file transfer across the VPN to a local machine is possible and that all employees of LSC with operational or management duties had the ability to access the system with an "admin" login, which provided greater rights than individual user logins and that the password for the "admin" login never changed.

85.     The Individual Defendants deny the allegations in paragraph 85 for lack of knowledge and information to form a belief about the truth of the allegations, except admit that LSC commissioned audits for certain of its systems.

86.     The Individual Defendants admit the allegations in paragraph 86.

87.     The Individual Defendants deny the allegations in paragraph 87, and aver that Louis had experience with Excel, Access, and other general tools used in the back office.

88.     Paragraph 88 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement dated April 1, 2004 between LSC and Louis exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 88.

89.     Paragraph 89 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement dated April 1, 2004 between LSC and Louis exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 89.

90.     Paragraph 90 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement dated April 1, 2004 between LSC and Louis exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 90.

91.     Paragraph 91 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement dated April 1, 2004 between LSC and Louis exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 91.

92.    Paragraph 92 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement dated April 1, 2004 between LSC and Louis exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 92.

93.    The Individual Defendants admit the allegations in paragraph 93, except aver that LSC's clearing system was developed by ROX prior to Louis' promotion to the position of President.

94.    The Individual Defendants admit the allegations in paragraph 94.

95.    Paragraph 95 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 95.

96.    Paragraph 96 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 96.

97.    Paragraph 97 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms,

and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 97.

98.     Paragraph 98 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 98.

99.     Paragraph 99 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 99.

100.    Paragraph 100 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 100.

101.    Paragraph 101 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 101. The Individual Defendants expressly deny that "Fowler's primary role with LSC/ROX Systems was to create and develop code and other technology," and

aver that Fowler served as an "operations manager" whose primary duties included technical support and trading support.

102.     Paragraph 102 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 102.

103.     Paragraph 103 asserts legal conclusions to which no response is necessary. The Individual Defendants admit only that a non-compete and confidentiality agreement between LSC and Fowler exists while referring this Court to the complete agreement for its actual terms, and otherwise deny any allegations, characterizations, or legal conclusions concerning this agreement alleged in paragraph 103.

104.     The Individual Defendants admit that Fowler worked on writing and improving code at LSC and designed the "Dashboard" system, and otherwise deny the allegations in paragraph 104.

105.     While the Individual Defendants admit the allegation in paragraph 105 that when they "began working for LSC, they had no background in the clearing industry and no experience designing clearing systems," they deny the allegation in paragraph 105 that "LSC and ROX Systems taught them how the clearing business worked as well as LSC and ROX Systems' unique methods for processing transactions," and aver that knowledge about the clearing industry is extensively available from The Depository Trust & Clearing Corporation ("DTCC"), and that much of their clearing expertise was obtained from DTCC and other industry experts while employed at LSC.

106.     The Individual Defendants admit the allegations in paragraph 106 as to Fowler, but deny the allegations in paragraph 106 as to Louis, except admit that Louis completed financial certifications while employed at LSC that authorized him to sell and trade securities. The Individual Defendants aver that Louis worked at Rothschild Bank and Credit Agricole prior to joining LSC.

107.     The Individuals Defendants admit the allegation in paragraph 107 that "[t]hroughout the duration of their employment with LSC/ROX" they "had access to, and used" Plaintiffs' information, but deny all remaining allegations in paragraph 107, including the characterization of the information as confidential and proprietary and that the Individual Defendants were "highly compensated."

108.     Paragraph 108 asserts legal conclusions to which no response is necessary. To the extent paragraph 108 contains factual assertions, the Individual Defendants deny the allegations in paragraph 108 for lack of knowledge and information to form a belief about the truth of the allegations, specifically noting that any purported LSC manuals are not in the possession, custody or control of the Individual Defendants.

109.     The Individual Defendants deny the allegations in paragraph 109.

110.     The Individual Defendants deny the allegations in paragraph 110.

111.     The Individual Defendants deny the allegations in paragraph 111, and underscore that Fowler was never at a dinner meeting with Mr. Lek and an executive at B. Riley.  The Individual Defendants aver that to the extent such a meeting occurred it was between Mr. Lek and an executive from B. Riley (at which neither Louis nor Fowler were present), which occurred after the initiation of an SEC enforcement action against LSC and Mr. Lek.

112.    The Individual Defendants deny the allegations in paragraph 112 for lack of knowledge and information to form a belief about the truth of the allegations.

113.    The Individual Defendants deny the allegations in paragraph 113 for lack of knowledge and information to form a belief about the truth of the allegations.

114.    The Individual Defendants deny the allegations in paragraph 114 for lack of knowledge and information to form a belief about the truth of the allegations.

115.    The Individual Defendants deny the allegations in paragraph 115, except admit only that a document exists with the file name "Operation Secret Octopus" that was prepared by Louis and Fowler while emphatically denying the motive and characterizations incorrectly ascribed to the document by Plaintiffs, and aver that the file was a four-page general memorandum with information on the clearing industry, a summary of Louis's and Fowler's professional backgrounds, and a basic timeline to create self-clearing capabilities at B. Riley, and further aver that while LSC has been a trading broker-dealer for more than 25 years, it has offered clearing services for substantially less.  The Individual Defendants refer this Court to the file for a complete recitation of its contents and further aver that, in context, it is clear that the reference to putting LSC "out of business" related to their impending departures amid a wave of attrition, and was unrelated to the prospect of B. Riley (which was not a customer) gaining self-clearing capabilities.

116.    As to the allegations in paragraph 116, the Individual Defendants admit only that they planned to work at B. Riley during spring of 2018, and that Louis submitted a resume to B. Riley, and deny the remaining allegations in paragraph 116. The Individual Defendants aver that the allegation that "Louis' resume did not refer to any general knowledge he might possess about back office processes used in the securities industry" is incorrect, and that the resume

specifically mentions general knowledge, including Louis' securities licenses.  The Individual Defendants also deny that Louis' resume listed any "LSC/ROX applications" by name, and aver that the words "Stock Loan Management" were a general description of management of stock loan, not any LSC/ROX applications, and further aver that the resume stated that Louis had experience in fails management, OCC management, wire management, and real time clearing monitoring, as general descriptions of skills not programs.

117.    The Individual Defendants deny the allegations in paragraph 117.

118.    The Individual Defendants deny the allegations in paragraph 118, and aver that Louis' never "admitted the proprietary nature of the LSC/ROX systems in his resume," and specifically object to the mischaracterization of the statements made in Louis' resume.

119.    The Individual Defendants deny the allegations in paragraph 119, except admit that they sought to keep their intentions to resign confidential until they, in fact, offered their resignations, and refer to the communications referenced in paragraph 119 for a complete recitation of their contents.

120.    The Individual Defendants admit the allegations in paragraph 120, except refer to the documents referenced therein for a complete recitation of their contents.

121.    The Individual Defendants deny the allegations in paragraph 121, except admit that Fowler purchased a new – off the shelf – basic Dell XPS desktop computer with nearly identical features to his then-five-year-old Dell desktop computer, and that the CISO assisted Fowler with setting up his new desktop for work, including accessing the VPN, as required by the terms of Fowler's employment, and further aver that Fowler used the new computer in connection with his employment with LSC in the same manner that he had used his old computer.

122.    The Individual Defendants admit the allegations in paragraph 122, but object to the mischaracterization of the text message. The Individual Defendants aver that a review of the full thread of text messages makes clear that the text message was a joke and was not in fact related to Fowler, but to another employee who earlier that week had been accused by the CISO of stealing a hard drive from the office following her resignation.

123.    The Individual Defendants deny the allegations in paragraph 123.

124.    The Individual Defendants admit the allegations in paragraph 124, except deny the quote insofar as neither Louis (nor Fowler) stated, "We are both leaving, and we are both going to Riley to make them [B. Riley] self-clearing."

125.    The Individual Defendants deny the allegations in paragraph 125, and aver that in the spring and summer of 2018 LSC was in the midst of substantial attrition.

126.    The Individual Defendants deny the allegations in paragraph 126.  The Individual Defendants aver that to the extent this paragraph expresses LSC intentions and understanding, such intentions and understanding were never communicated to either Louis or Fowler.  Louis and Fowler further aver that, as an accommodation to Mr. Lek, they agreed to stay on for a month or more, and during that time worked tirelessly to transition their roles and train others at LSC, unaware that Mr. Lek intended to take aggressive and punitive actions against them once the transition tasks were complete.

127.    The Individual Defendants deny the allegations in paragraph 127.

128.    The Individual Defendants admit the allegations in paragraph 128.

129.    The Individual Defendants admit the allegation in paragraph 129 that a conversation occurred between Mr. Lek and Fowler on June 13, but deny the characterizations set forth therein. The Individual Defendants aver that this conversation had nothing to do with

technology, and Mr. Lek and Fowler were discussing the need for *personnel* if B. Riley began self-clearing, and further aver that B. Riley had no interest in Plaintiffs' technology, but sought to hire Louis and Fowler to build a new clearing system – from "scratch" – based on current technology as opposed to older technology upon which Plaintiffs' system was built.

130.    The Individual Defendants deny the allegations in paragraph 130, except admit that a conversation occurred between Mr. Lek and Fowler on June 27.

131.    The Individual Defendants deny the allegations in paragraph 131.  The Individual Defendants categorically deny the mischaracterization that Louis "removed" anything from Plaintiffs' offices for nefarious reasons.  Fowler worked with source code as part of his job at LSC.

132.    The Individual Defendants deny the allegations in paragraph 132, except admit that Fowler's computer had Google Chrome, Microsoft Visual Studio, Signal, and DropBox installed on it at the time.

133.    The Individual Defendants deny the allegations in paragraph 133, except admit that Louis has limited knowledge of C++.  The Individual Defendants aver that Louis' computer did not contain "all of Plaintiffs' source code".

134.    While the Individual Defendants object to all modifiers and adverbs, they admit the allegation in paragraph 134 that the document referred to as "Operation Secret Octopus" discussed the use of C# as a programing language for clearing.

135.    The Individual Defendants deny the allegations in paragraph 135.

136.    The Individual Defendants deny the allegations in paragraph 136, and aver solely on information and belief that Mr. Lek did recapitalize the company with funds drawn out of his IRA.

137.   As to paragraph 137, the Individual Defendants only admit that, after his resignation, Fowler told Mr. Lek that he intended to use Microsoft Azure, a cloud computing software, but deny all other allegations in paragraph 137, including the allegation that Fowler intended to use Microsoft Azure "for the clearing system that B. Riley was hiring him to replicate."

138.   The Individual Defendants deny the allegations in paragraph 138.

139.   The Individual Defendants deny the allegations in paragraph 139, and further aver that neither Louis nor Fowler acquired Microsoft Azure for an improper purpose nor ever used Microsoft Azure for an improper purpose, and that most of Louis's use of Microsoft Azure was assisting Peter Solano (the CISO) to improve his horse-racing-analytics side business 2minutes2post, and Fowler's use was entirely for educational purposes.

140.   The Individual Defendants deny the allegations in paragraph 140, and aver that Louis was not running "clearing technology" on Azure and the Azure account was created under the username "nicolas@leksecurities.com."

141.   The Individual Defendants deny the allegations in paragraph 141.

142.   The Individual Defendants deny the allegations in paragraph 142, and aver that Louis had used the account nicolas@leksecurities.com, an account under Plaintiffs' control, for Azure access, and that the CISO never "challenged what Louis was doing," and Louis stopped using the account because the credits had been exhausted.  The Individual Defendants admit that Louis "did not build a comparable system on it."

143.   The Individual Defendants deny the allegations in paragraph 143, and aver that Louis and the CISO discussed Azure on multiple occasions in connection with 2minutes2post.

144.    The Individual Defendants deny the allegations in paragraph 144 for lack of knowledge and information to form a belief about the truth of the allegations.

145.    The Individual Defendants deny the allegations in paragraph 145 for lack of knowledge and information to form a belief about the truth of the allegations.

146.    The Individual Defendants deny the allegations in paragraph 146, and further aver that neither Louis nor Fowler acquired Microsoft Azure for an improper purpose nor ever used Microsoft Azure for an improper purpose.

147.    The Individual Defendants admit the allegations in paragraph 147. The Individual Defendants aver that while Fowler notified B. Riley of the existence of a non-compete and confidentiality agreement, B. Riley, upon information and belief, did not believe it was competing with LSC/ROX because, among other things, B. Riley was a customer of LSC's competitors and hoped to become self-clearing and not enter the clearing business.

148.    The Individual Defendants admit the allegations in paragraph 148.

149.    The Individual Defendants admit that "On July 13, 2018, Louis returned his LSC laptop to Plaintiffs' CISO," but deny all other allegations in paragraph 149, except admit that Louis was aware of pending litigation (including the SEC's enforcement action) and that LSC documents needed to be preserved pursuant to the pending SEC litigation. The Individual Defendants aver that Louis did not erase the contents of the laptop, but did reset the laptop to factory settings, and discovery had already been completed in the SEC litigation referenced, and further aver that the computee had only contained personal files (such as tax returns, movies and videos) and that Louis informed the CISO of this when returning the device.

150.    The Individual Defendants deny the allegations in paragraph 150 for lack of knowledge and information to form a belief about the truth of the allegations, except admit that

the Individual Defendants received termination letters, and refer this Court to that document in its entirety.

151.    The Individual Defendants admit the allegations in paragraph 151, but refer to the letters referenced therein for a full and accurate recitation of their contents.

152.    The Individual Defendants admit only that they received an email on July 13, 2018 from Plaintiffs' counsel, but deny all other allegations in paragraph 152, including Plaintiffs' mischaracterization of the email.

153.    The Individual Defendants admit that B. Riley rescinded its employment offer to Louis and Fowler, but deny for lack of knowledge and information to form a belief about the truth of the allegation in paragraph 153 that "B. Riley voluntarily produced emails disclosing the existence of Operation Secret Octopus."  The Individual Defendants aver that both Louis and Fowler both voluntarily produced documents to Plaintiffs, including the four-page document referred to as "Operation Secret Octopus."

154.    The Individual Defendants admit the allegation in paragraph 154 that "Following their departure from LSC and ROX, Louis and Fowler engaged in some discussions with LSC," but deny the allegation in paragraph 154 that "however, when the parties could not reach a resolution, Louis's and Fowler's counsel ceased communicating with LSC's counsel."

155.    The Individual Defendants deny the allegations in paragraph 155 for lack of knowledge and information to form a belief about the truth of the allegations.

156.    The Individual Defendants admit the allegations in paragraph 156 solely upon information and belief.

157.    The Individual Defendants deny the allegations in paragraph 157 for lack of knowledge and information to form a belief about the truth of the allegations.

158.    The Individual Defendants deny the allegations in paragraph 158 for lack of knowledge and information to form a belief about the truth of the allegations.

159.    The Individual Defendants deny the allegations in paragraph 159. The Individual Defendants aver that Fowler never demoed or demonstrated any LSC proprietary system to Volant."

160.    The Individual Defendants admit only that they began working at Volant in February 2019, and deny all remaining allegations in paragraph 160.

161.    The Individual Defendants deny the allegations in paragraph 161.

162.    The Individual Defendants deny the allegations in paragraph 162.

163.    The Individual Defendants deny the allegations in paragraph 163.

COUNT ONE
AGAINST THE DEFENDANTS
(Violations of Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*)

164.    Paragraph 164 contains no allegations and thus no response is necessary.

165.    Paragraph 165 asserts legal conclusions to which no response is necessary.

166.    The Individual Defendants deny the allegations in paragraph 166.

167.    The Individual Defendants deny the allegations in paragraph 167, and aver that neither Louis nor Fowler "possess confidential information belonging to Plaintiff."

168.    The Individual Defendants deny the allegations in paragraph 168.

169.    Paragraph 169 asserts legal conclusions to which no response is necessary.

170.    Paragraph 170 asserts legal conclusions to which no response is necessary.

171.    Paragraph 171 asserts legal conclusions to which no response is necessary. To the extent

172.    The Individual Defendants deny the allegations in paragraph 172, and aver that neither Louis nor Fowler retains any of Plaintiffs' "trade secrets or confidential information" nor are they using any such information to compete with or otherwise harm Plaintiffs.

173.    The Individual Defendants deny the allegations in paragraph 173 for lack of knowledge and information to form a belief about the truth of the allegations.

174.    The Individual Defendants deny the allegations in paragraph 174, and aver that neither Louis nor Fowler are using "Plaintiffs' trade secrets or confidential information."

175.    Paragraph 175 asserts legal conclusions to which no response is necessary.

176.    Paragraph 176 asserts legal conclusions to which no response is necessary.

177.    Paragraph 177 asserts legal conclusions to which no response is necessary.

178.    Paragraph 178 asserts legal conclusions to which no response is necessary.

179.    Paragraph 179 asserts legal conclusions to which no response is necessary.

COUNT TWO
AGAINST THE DEFENDANTS
(Copyright Infringement, 17 U.S.C. § 412 *et seq.*)

180.    Paragraph 180 contains no allegations and thus no response is necessary.

181.    The Individual Defendants deny the allegations in paragraph 181 for lack of knowledge and information to form a belief about the truth of the allegations.

182.    The Individual Defendants deny the allegations in paragraph 182 for lack of knowledge and information to form a belief about the truth of the allegations.

183.    The Individual Defendants deny the allegations in paragraph 183, and aver that neither Louis nor Fowler have copied, retained, or used the contents of "Plaintiffs' source code and software."

184.    Paragraph 184 asserts legal conclusions to which no response is necessary.

185.    Paragraph 185 asserts legal conclusions to which no response is necessary.

## COUNT THREE
## BY LSC AGAINST LOUIS
(Breach of Contract)

186.    Paragraph 186 contains no allegations and thus no response is necessary.

187.    Paragraph 187 asserts legal conclusions to which no response is necessary.

188.    Paragraph 188 asserts legal conclusions to which no response is necessary.

189.    Paragraph 189 asserts legal conclusions to which no response is necessary. To the extent paragraph 189 contains factual allegations, Louis denies all allegations in paragraph 189, and avers that all of Plaintiffs' "information" was returned prior to termination of his employment.

190.    Paragraph 190 asserts legal conclusions to which no response is necessary. To the extent paragraph 190 contains factual allegations, Louis denies all allegations in paragraph 190, and avers that he is not using "Plaintiffs' confidential and proprietary information for his own purposes."

191.    Paragraph 191 asserts legal conclusions to which no response is necessary.

192.    Paragraph 192 asserts legal conclusions to which no response is necessary.

193.    Paragraph 193 asserts legal conclusions to which no response is necessary. To the extent paragraph 193 contains factual allegations, Louis denies all allegations in paragraph 193, and avers that he is not "disclosing Plaintiff's confidential information."

194.    Paragraph 194 asserts legal conclusions to which no response is necessary.

195.    Paragraph 195 asserts legal conclusions to which no response is necessary.

196.    Paragraph 196 asserts legal conclusions to which no response is necessary.

## COUNT FOUR
## BY LSC AGAINST FOWLER

(Breach of Contract)

197.    Paragraph 197 contains no allegations and thus no response is necessary.

198.    Paragraph 198 asserts legal conclusions to which no response is necessary.

199.    Paragraph 199 asserts legal conclusions to which no response is necessary.

200.    Paragraph 200 asserts legal conclusions to which no response is necessary. To the extent paragraph 200 contains factual allegations, Fowler denies all allegations in paragraph 200, and avers he did not "fail[] to return Plaintiffs' confidential and proprietary information to LSC when his employment terminated."

201.    Paragraph 201 asserts legal conclusions to which no response is necessary. To the extent paragraph 201 contains factual allegations, Fowler denies all allegations in paragraph 201, and avers that he is not using "Plaintiffs' confidential and proprietary information for his own purposes."

202.    Paragraph 202 asserts legal conclusions to which no response is necessary. To the extent paragraph 202 contains factual allegations, Fowler denies all allegations in paragraph 202, and avers that he is not competing with LSC.

203.    Paragraph 203 asserts legal conclusions to which no response is necessary.

204.    Paragraph 204 asserts legal conclusions to which no response is necessary.

205.    Paragraph 205 asserts legal conclusions to which no response is necessary.

206.    Paragraph 206 asserts legal conclusions to which no response is necessary.

207.    Paragraph 207 asserts legal conclusions to which no response is necessary.

COUNT FIVE
AGAINST LOUIS AND FOWLER
(Misappropriation)

208.    Paragraph 208 contains no allegations and thus no response is necessary.

209.     Paragraph 209 asserts legal conclusions to which no response is necessary. To the extent paragraph 209 contains factual allegations, the Individual Defendants deny all allegations in paragraph 209, and aver that neither Louis nor Fowler have disclosed or used any of LSC's confidential or proprietary information.

210.     Paragraph 210 asserts legal conclusions to which no response is necessary. To the extent paragraph 210 contains factual allegations, the Individual Defendants deny all allegations in paragraph 210, and aver that neither Louis nor Fowler have taken any of Plaintiffs' non-public information and used it for personal gain.

211.     The Individual Defendants deny the allegations in paragraph 211, and aver that Plaintiffs' clearing system is not novel and is based on publicly known and available information readily available outside of Plaintiffs' enterprises.

212.     The Individual Defendants deny the allegations in paragraph 212 for lack of knowledge and information to form a belief about the truth of the allegations.

213.     The Individual Defendants deny the allegations in paragraph 213 for lack of knowledge and information to form a belief about the truth of the allegations.

214.     The Individual Defendants deny the allegations in paragraph 214 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that Plaintiffs' clearing system lacks any value outside of Plaintiffs' enterprises.

215.     The Individual Defendants deny the allegations in paragraph 215 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that Plaintiffs' clearing system lacks any value outside of Plaintiffs' enterprises.

216.     The Individual Defendants deny the allegations in paragraph 216 for lack of knowledge and information to form a belief about the truth of the allegations, and aver that

Plaintiffs' clearing system can be easily replicated based on publicly available information, but in any event lacks any value outside of Plaintiffs' enterprises.

217.   The Individual Defendants deny the allegations in paragraph 217.

218.   Paragraph 218 asserts legal conclusions to which no response is necessary.

COUNT SIX
<u>AGAINST THE VOLANT DEFENDANTS</u>
(Tortious Interference with Contract)

219.   Paragraph 219 contains no allegations and thus no response is necessary.

220.   The Individual Defendants deny the allegations in paragraph 220 for lack of knowledge and information to form a belief about the truth of the allegations.

221.   Paragraph 221 asserts legal conclusions to which no response is necessary. To the extent paragraph 221 refers to terms in the non-compete and confidentiality agreement between LSC and Louis, the Individual Defendants refer this Court to that document for its full terms.

222.    Paragraph 222 asserts legal conclusions to which no response is necessary. To the extent paragraph 222 refers to terms in the non-compete and confidentiality agreement between LSC and Fowler, the Individual Defendants refer this Court to that document for its full terms.

223.   The Individual Defendants deny the allegations in paragraph 223 for lack of knowledge and information to form a belief about the truth of the allegations.

224.   Paragraph 224 asserts legal conclusions to which no response is necessary. To the extent paragraph 224 contains factual allegations, the Individual Defendants deny all allegations in paragraph 224 for lack of knowledge and information to form a belief about the truth of the allegations.

225.   Paragraph 225 asserts legal conclusions to which no response is necessary.

COUNT SEVEN
<u>AGAINST LOUIS</u>

(Breach of Fiduciary Duty and Duty of Loyalty)

226.    Paragraph 226 contains no allegations and thus no response is necessary.

227.    Paragraph 227 asserts legal conclusions to which no response is necessary

228.    The Individual Defendants admit the allegations in paragraph 228.

229.    The Individual Defendants deny the allegations in paragraph 229, and aver that Louis has not provided confidential information he obtained from Plaintiffs to Volant (or anybody) for his personal benefit or for the benefit of Volant (or anybody else).

230.    Paragraph 230 asserts legal conclusions to which no response is necessary, and the Individual Defendants otherwise deny all allegations in paragraph 230.

231.    Paragraph 231 asserts legal conclusions to which no response is necessary.

COUNT EIGHT
<u>AGAINST FOWLER</u>
(Breach of Duty of Loyalty)

232.    Paragraph 232 contains no allegations and thus no response is necessary.

233.    Paragraph 233 asserts legal conclusions to which no response is necessary.

234.    The Individual Defendants admit the allegations in paragraph 234.

235.    The Individual Defendants deny the allegations in paragraph 235, and aver that Fowler has not provided confidential information he obtained from Plaintiffs to Volant (or anybody) for his personal benefit or for the benefit of Volant (or anybody else).

236.    Paragraph 236 asserts legal conclusions to which no response is necessary, and the Individual Defendants otherwise deny all allegations in paragraph 236.

237.    Paragraph 237 asserts legal conclusions to which no response is necessary.

**AFFIRMATIVE DEFENSES**

The Individual Defendants assert the following defenses and reserve the right to assert other defenses and claims when and if they become appropriate and/or available in this action. Without assuming any burden of proof that it would not otherwise bear, the Individual Defendants assert the following Defenses:

### FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, because this Court lacks subject matter jurisdiction over this action.

### SECOND DEFENSE

The Complaint fails, in whole or in part, to state a claim on which relief can be granted.

### THIRD DEFENSE

Plaintiffs' claims are barred under the doctrines of laches, assumption of risk, failure of consideration, estoppel, the statute of frauds, duress, and statute of limitations.

### FOURTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands.

Dated: New York, New York
April 18, 2019

FORD O'BRIEN LLP

Robert S. Landy
Matthew Aaron Ford
Camille Raad*
575 Fifth Avenue
17th Floor
New York, New York 10017
rlandy@fordobrien.com
(212) 256-1047
*Attorneys for Defendants Nicolas Louis and Jonathan Fowler*

*Admitted in New York Only

32