UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEK SECURITIES CORPORATION and
ROX SYSTEMS, INC.,

            Plaintiffs,

    v.

NICOLAS LOUIS, JONATHAN FOWLER,
VOLANT HOLDINGS, LLC, d/b/a VOLANT
TRADING, VOLANT TRADING, LLC,
VOLANT LIQUIDITY, LLC, and VOLANT
EXECUTION, LLC,

            Defendants.

No. 19-cv-02142 (RMB) (BCM)

---

**VOLANT DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 3

ARGUMENT ................................................................................................................................... 3

I.     APPLICABLE LEGAL STANDARDS ............................................................................. 3

II.    THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VOLANT FOR VIOLATION OF THE DTSA. ........................................................................................ 5

III.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VOLANT FOR COPYRIGHT INFRINGEMENT ................................................................................. 9

IV.   THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VOLANT FOR TORTIOUS INTERFERENCE WITH CONTRACT. ....................................................... 11

        A.    The Noncompete Agreements Are Overbroad and Unenforceable. ...................... 12

        B.    Termination of the Individual Defendants' Employment Without Cause Prevents the Enforcement of the Noncompete Clauses. ........................... 13

        C.    Plaintiffs Have Failed to Adequately Allege that Volant Intentionally Procured the Individual Defendants' Breach. ........................................................ 14

CONCLUSION ............................................................................................................................... 15

## **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*AM Medica Comm. Grp. v. Kilgallen*,
    261 F. Supp. 2d 258 (S.D.N.Y. 2003) .................................................................................. 12

*Amiron Dev. Corp. v. Sytner*,
    No. 12-CV-3036 JS ETB, 2013 WL 1332725 (E.D.N.Y. Mar. 29, 2013) ............................. 7

*Arakelian v. Omnicare, Inc.*,
    735 F. Supp. 2d 22 (S.D.N.Y. 2010) .................................................................................... 13

*Art & Cook, Inc. v. Haber*,
    No. 17-cv-1634, 2017 U.S. Dist. LEXIS 164366 (E.D.N.Y. Oct. 3, 2017) ........................... 5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................................... 3, 4, 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................................... 3, 4

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ................................................................................................... 4

*Computer Assocs. Int'l v. Altai*,
    982 F.2d 693 (2d Cir. 1992) ................................................................................................... 9

*EarthWeb, Inc. v. Schlack*,
    71 F. Supp. 2d 299 (S.D.N.Y. 1999) .................................................................................... 13

*Elsevier Inc. v. Doctor Evidence, LLC*,
    2018 U.S. Dist. LEXIS 10730 (S.D.N.Y. Jan. 23, 2018) ............................................... 5, 6, 8

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, et al.*,
    586 U.S._ (2019) .................................................................................................................. 10

*Free Country Ltd. v. Drennen*,
    235 F. Supp. 3d 559 (S.D.N.Y. 2016) .................................................................................... 5

*Indira v. West Side GI, LLC*,
    No. 18-cv-01005, 2018 U.S. Dist. LEXIS 192728 .................................................................. 6

*Indus. Packaging Supplies, Inc. v. Channell*,
    No. 18 CV 165, 2018 WL 2560993 (N.D. Ill. June 4, 2018) .................................................. 8

*Installed Bldg. Products, LLC v. Cottrell*,
    No. 13-CV-1112, 2014 WL 3729369 (W.D.N.Y. July 25, 2014) ......................................... 13

*JJ Plank Co., LLC v. Bowman*,
    No. CV 18-0798, 2018 WL 4291751 (W.D. La. Sept. 7, 2018) ............................................. 8

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006) ................................................................................................. 11

*Lumetrics, Inc. v. Blalock*,
  23 F. Supp. 3d 138 (W.D.N.Y. 2014) ............................................................................... 9

*Mathias v. Jacobs*,
  167 F. Supp. 2d 606 (S.D.N.Y. 2001) ........................................................................... 12

*Morris v. Schroder Capital Mgmt. Int'l*,
  445 F.3d 525 (2d Cir. 2006) ........................................................................................... 13

*Nicosia v. Amazon.com, Inc.*,
  834 F.3d 220 (2d Cir. 2016) ........................................................................................... 4

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007) ............................................................................................. 4

*Poon v. Roomorama, LLC*,
  No. 09-cv-3224, 2009 WL 3762115 (S.D.N.Y. Nov. 10, 2009) ................................... 10

*Saphirstein v. Mauzone Mania LLC*,
  No. I 5-CV-7264, 2017 WL 3278893 (E.D.N.Y. July 31, 2017) ................................... 6

*SIFCO Indus., Inc. v. Advanced Plating Tech., Inc.*,
  867 F. Supp. 155 (S.D.N.Y. 1994) ................................................................................. 13

*Skinner v. Switzer*,
  562 U.S. 521 (2011) ........................................................................................................ 4

*Stadnick v. Vivint Solar, Inc.*,
  861 F.3d 31 (2d Cir. 2017) ............................................................................................. 4

*Starr v. Sony BMG Music Entm't*,
  592 F.3d 314 (2d Cir. 2010) ........................................................................................... 4

*Sullivan v. Duncan,*
  No. 13-cv-1640, 2015 WL 4393316 (S.D.N.Y. July 17, 2015) ................................ 9, 14

*Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*,
  No. l5-CV-211, 2016 WL 5338550 (S.D.N.Y. Sept. 23, 2016) ..................................... 5

*Universal Processing LLC v. Zhuang*,
  No. 17 CV 10210, 2018 U.S. Dist. LEXIS 168730 (S.D.N.Y. Sept. 28, 2018) ............. 5

*Veramark Techs., Inc. v. Bouk*,
  10 F. Supp. 3d 395 (W.D.N.Y. 2014) ........................................................................... 13

*Yucyco, Ltd. v. Republic of Slovenia*,
  984 F. Supp. 209 (S.D.N.Y. 1997) ................................................................................ 14

**State Cases**

*BDO Seidman v. Hirshberg*,
  93 N.Y.2d 382 (N.Y. 1999) ........................................................................................... 12

*Brown & Brown, Inc. v. Johnson*,
  25 N.Y.3d 364 (2015) .................................................................................................... 12

iii

*Lama Holding Co., et al. v. Smith Barney Inc. et al.*,
    88 N.Y.2d 413 (1996) ................................................................................................11

**Federal Statutes**

18 U.S.C. § 1831 *et seq.*............................................................................................................5

18 U.S.C. § 1839(6) ...................................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 4, 15

Defendants Volant Holding, LLC d/b/a Volant Trading; Volant Trading, LLC; Volant Liquidity, LLC; and Volant Execution, LLC (collectively, "Volant"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their Motion to Dismiss Counts One, Two, and Six of the Complaint (the "Complaint" or "Compl.") with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs' claims against Volant are comprised of nothing more than conclusory and speculative allegations. While the Complaint goes on at great length about the history of Lek Securities Corporation ("Lek"), the development of its internal software, and its prior disputes with defendants Nicolas Louis and Jonathan Fowler, its allegations against Volant are baseless and conspicuously devoid of any factual support. Consequently, all three causes of actions that Plaintiffs have brought against Volant should be dismissed, and Volant should be dismissed from this case.

As to the claim that Volant has violated the Defend Trade Secrets Act of 2016 (the "DTSA"), Plaintiffs do not set forth any factual basis to believe that Volant possesses or has acquired or has used Plaintiffs' trade secrets. Instead, the Complaint focuses almost entirely on actions taken by Louis and Fowler when they sought employment with non-party B. Riley Capital Management, LLC, approximately eight months before they started working at Volant. Louis and Fowler have not worked at Lek since that time, nor have they had any subsequent access to Lek's computer systems. These dated events have no bearing on, and provide no support for, Plaintiffs' speculative claim that Volant has misappropriated Plaintiffs' trade secrets. Tellingly, the small number of Plaintiffs' allegations that state that Volant has violated the DTSA are all made purely upon information and belief without any factual support. Such allegations should be ignored.

1

They are nothing more than hypothetical conjecture and fall far short of meeting the threshold to survive a motion to dismiss.

With respect to copyright infringement, Plaintiffs again fail to state a plausible claim. Critically, there is not a single allegation in the Complaint that Volant has created or used any software that has been copied from or is "substantially similar" to Plaintiffs' software. This failure to plead an essential element of copyright infringement is fatal to the claim. Moreover, the only registered copyrights referenced by Plaintiffs in their pleadings are from at least twelve years ago and have no apparent connection to the clearing systems software at issue here.

Finally, the tortious interference with contract claim also fails. The Complaint fails to make any supported allegations that Volant intended to induce a breach of Lek's contractual agreements with Louis and Fowler. On the contrary, Volant took extensive measure to ensure that Lek's confidential information was protected and that Louis and Fowler abided by their confidentiality obligations. In addition, the noncompete agreements between Lek and the individual defendants are overbroad and unenforceable under New York law, which strongly disfavors restrictive covenants. Thus, there is no valid contractual agreement that could give rise to a tortious interference claim against Volant. The 18-month period of the noncompete clauses is significantly longer than necessary to protect Lek's legitimate business interests, and the scope of the limitation on future employment is overbroad. Regardless, Lek's termination of Louis and Fowler without cause renders the restrictive covenants unenforceable.

In sum, Volant has no place in this lawsuit. All three causes of action that have been pled against it are meritless and should be dismissed.

BACKGROUND

Volant is a technology-driven trading firm that has existed for over a decade. It provides its clients with automated options, futures, and equities trading services, and has offices in New York, Chicago, and Hong Kong.

Lek terminated Louis and Fowler on July 13, 2018. (Compl. ¶ 148.) Volant notified Lek of its intent to hire Louis and Fowler approximately six months later – approximately one and a half months prior to the commencement of this lawsuit – in January 2019. (Compl. ¶ 157.) Louis and Fowler began working for Volant on February 6, 2019. Due to the temporary restraining order entered by the Court on March 8, 2019, neither Louis nor Fowler have performed any work for Volant since that date.[1]

ARGUMENT

Plaintiffs have failed to state any claims against Volant that meet the required standards of plausibility. Their claims against Volant are entirely conclusory and should be dismissed.

I. **APPLICABLE LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard requires "more than a sheer possibility that the defendant has acted unlawfully." Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops

---

[1] Volant provided an extensive statement of facts in its opposition to Plaintiffs' Application for a Temporary Restraining Order and Preliminary Injunction. Volant hereby incorporates those facts in support of this Motion to Dismiss.

3

short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

On a Rule 12(b)(6) motion, the question is "not, whether [the plaintiff] will ultimately prevail," but rather "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but giv[e] no effect to legal conclusions couched as factual allegations." *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quotation marks omitted) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of "further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557).

"'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, a court need not give credence to legal conclusions couched as factual allegations, or factual allegations that merely create the suspicion of a cognizable cause of action. *Id.* at 678-79; *Twombly*, 550 U.S. at 555-56; *see also In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (On a motion to dismiss, a court "need not accord '[l]egal conclusions, deductions, or opinions couched as factual allegations . . . a presumption of truthfulness.'") (citations omitted).

For the purpose of a motion to dismiss under Rule 12(b)(6), "[a] complaint 'is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

4

## II. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VOLANT FOR VIOLATION OF THE DTSA.

The DTSA "expanded the provisions of 18 U.S.C. § 1831 *et seq.*, providing a federal cause of action to the owner of a trade secret that is misappropriated and is related to a product or service used in, or intended for use in, interstate or foreign commerce." *Art & Cook, Inc. v. Haber*, No. 17-cv-1634, 2017 U.S. Dist. LEXIS 164366, at *5 (E.D.N.Y. Oct. 3, 2017). Misappropriation under the DTSA, is defined as "an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." *Free Country Ltd. v. Drennen*, 235 F. Supp. 3d 559, 565 (S.D.N.Y. 2016) (quoting *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, No. l5-CV-211, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016)). "'Improper means' includes breach of duty to maintain secrecy, but 'does not include reverse engineering, independent derivation, or any other lawful means of acquisition.'" *Syntel Sterling*, 2016 WL 5338550, at *19 (quoting 18 U.S.C. § 1839(6)); *see also Elsevier Inc. v. Doctor Evidence, LLC*, 2018 U.S. Dist. LEXIS 10730, at *12 (S.D.N.Y. Jan. 23, 2018) (stating that improper means under the DTSA "excludes reverse engineering and independent derivation") (internal quotation marks omitted).

"Alleging the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue, does not give rise to a plausible allegation of a trade secret's existence." *Elsevier Inc. v. Doctor Evidence, LLC*, 2018 U.S. Dist. LEXIS 10730, at *15 (S.D.N.Y. Jan. 23, 2018) (internal quotation marks and citations omitted); *see also Universal Processing LLC v. Zhuang*, No. 17 CV 10210, 2018 U.S. Dist. LEXIS 168730, at *7-8 (S.D.N.Y. Sept. 28, 2018) ("While it is not necessary to disclose every detail of an alleged

5

trade secret in a complaint . . . the complaint [must] allege facts sufficient to identify the information for which protection is claimed[.]"); *Indira v. West Side GI, LLC*, No. 18-cv-01005, 2018 U.S. Dist. LEXIS 192728, at *23 (dismissing DTSA claim for not adequately "delineat[ing] sufficient information about the nature" of the alleged trade secrets).  In addition, "'confidential information' is not equivalent to 'trade secrets' . . . [The] standard [for trade secrets is] far greater than the standard for confidentiality of business information." *Elsevier*, 2018 U.S. Dist. LEXIS 10730, at *14.  "Taking steps to protect information through a confidentiality agreement does not, on its own, suggest the existence of a bona fide trade secrets." *Id.* at *18.

Although not in the motion to dismiss context, the *Free Country* case is instructive as to why Plaintiffs' DTSA claim against Volant should be dismissed.  In *Free Country*, Judge Rakoff denied injunctive relief to the plaintiffs, because there was "no evidence of any wrongdoing by the corporate defendants . . . While their clear (and legitimate) intent was to go into direct competition with [the plaintiff], they appear to have been unaware prior to this lawsuit that [the individual defendants] transferred any allegedly confidential information to their personal possession, and there is no evidence that [corporate defendants] have ever come into possession of such information."

As in *Free Country*, Plaintiffs have not competently alleged that Volant ever possessed or received any misappropriated trade secrets.  Plaintiffs make only threadbare and conclusory allegations in the Complaint regarding Volant's involvement. Plaintiffs do not allege that Volant has possession of any misappropriated trade secrets nor does it provide any factual detail as to how or when Volant might have acquired any trade secrets. Such pleadings are insufficient to give Volant "fair notice of the claims against it." *Saphirstein v. Mauzone Mania LLC*, No.  I 5-CV-

7264, 2017 WL 3278893, at *3 (E.D.N.Y. July 31, 2017) (quoting *Amiron Dev. Corp. v. Sytner*, No. 12-CV-3036 JS ETB, 2013 WL 1332725, at *5 (E.D.N.Y. Mar. 29, 2013)).

Instead, Plaintiffs make a series of baseless assertions upon information and belief regarding Volant's allegedly improper motives and actions with regard to using Plaintiffs' trade secrets. To wit, the Complaint alleges:

- "*Upon information and belief* . . . Volant has offered employment positions to the Fonner Employees which would require them to . . . utilize the same confidential trade secret information they learned as a result of their employment with LSC." (Compl. ¶ 160.)

- "*Upon information and belief*, Volant has exploited, and continues to exploit, certain of Plaintiffs' confidential and proprietary information." (Compl. ¶ 163.)

- "*Upon information and belief*, Defendants possess confidential information belonging to Plaintiffs including source code, the design of LSC's unique and proprietary clearing system, and strategic business information that constitute trade secrets." (Compl. ¶ 166.)

- *Upon information and belief*, Volant has obtained and is using Plaintiffs' trade secrets or confidential information to unfairly compete with and/or otherwise harm Plaintiffs. (Compl. ¶ 173.)

These assertions are nothing more than conclusory allegations or restatements of the elements of a DTSA claim. Such boilerplate allegations and legal conclusions should not be given weight by the Court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("legal conclusions . . . must be supported by factual allegations").

In fact, Volant has taken extensive preemptive steps to ensure that it does not acquire or use any of Plaintiffs' trade secrets. Volant required the Individual Defendants to covenant that they would not use any of Plaintiffs' trade secrets in their work for Volant. (*See* Garfield Decl., Exs. B, C.) Further, Volant has procedures in place to ensure that Plaintiffs' proprietary information is not used. (*See* Shin Decl., 20-27.)

In addition, Plaintiffs have failed to plead any trade secrets with the requisite particularity discussed above. Plaintiffs assert broadly that their clearing system "consist[s] of more than 200

computer applications that work seamlessly together" to accomplish a large number of clearing-related tasks. (Compl. ¶ 34.) The Complaint continues to paint in broad strokes by generally describing a plethora of Plaintiffs' internal applications, including RTR, Real-Time Tickets, FailSheet, SWIFT, Wire Management, View Accounts, and the Stock Loan Management System. (Compl. ¶¶ 47-77.) However, when it comes time to describe with any particularity the alleged trade secrets that Plaintiffs believe have been misappropriated, the Complaint becomes conspicuously opaque. It makes vague allegations about how "Fowler worked extensively on writing and improving the source code for LSC's clearing system," "Louis and Fowler have a complete understanding of nearly every aspect of Plaintiffs' business," and that they "have learned" about Plaintiffs' trade secrets "during their employment." (Compl. ¶¶ 104, 109, 110). None of these unremarkable assertions are sufficient to establish the existence and misappropriation of trade secrets. *See Elsevier*, 2018 U.S. Dist. LEXIS 10730, at *15-18 (dismissing DTSA claim that merely alleged "the existence of general categories of confidential information, without providing any details to generally define the trade secrets at issue").

Moreover, to the extent Plaintiffs' claims hinge on Louis and Fowler's general knowledge of clearing software that they acquired while working for Plaintiffs, that is not a sufficient basis to establish a violation of the DTSA. *See JJ Plank Co., LLC* v. *Bowman,* No. CV 18-0798, 2018 WL 4291751, at *9 (W.D. La. Sept. 7, 2018) ("The law permits him to use his memory, experience, skills, even those developed during his former employment, in his new position[.]"); *see also Indus. Packaging Supplies, Inc. v. Channell*, No. 18 CV 165, 2018 WL 2560993, at *3 (N.D. Ill. June 4, 2018) (dismissing DTSA claim where former employee could avoid using Plaintiffs "trade secrets by simply . . . not using its proprietary designs, products, or processes.").

8

For these reasons, the Court should dismiss Plaintiffs' claims against Volant under the DTSA.

## III. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VOLANT FOR COPYRIGHT INFRINGEMENT.

"To prevail on a claim of copyright infringement, plaintiff must demonstrate both (1) ownership of a valid copyright and (2) infringement of the copyright by the defendant. Courts have held that a copyright claim must allege (1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts during what time the defendant infringed the copyright." *Sullivan v. Duncan,* No. 13-cv-1640, 2015 WL 4393316, at *4 (S.D.N.Y. July 17, 2015In the absence of direct evidence of copying, a plaintiff must show that the defendant "had access to the plaintiff's copyrighted work and that [] defendant's work is substantially similar" to the copyrighted material." *Computer Assocs. Int'l v. Altai*, 982 F.2d 693, 701 (2d Cir. 1992).

Plaintiffs have not and cannot present any such allegations. Most importantly, plaintiffs cannot possibly show similarity between their proprietary clearing software and any of Volant's software, because Volant has no such clearing software. Plaintiffs effectively concede this in the Complaint, by making no allegations regarding actual infringement by Volant, nor alleging that Volant has created any software with "substantial similarities" to any software copyrighted by the Plaintiffs. Notably, Louis and Fowler joined Volant in early February, and Volant has not created or used any internal clearing software since that date. This fact alone is clearly fatal to Plaintiffs' copyright infringement claim against Volant. *See Lumetrics, Inc. v. Blalock*, 23 F. Supp. 3d 138, 148 (W.D.N.Y. 2014) (dismissing copyright infringement claim because "there are no allegations

9

that the [defendant's] devices (or the software contained in those devices) are substantially similar to [plaintiff's] protected works").

Plaintiffs seemingly acknowledge this glaring deficiency in their copyright infringement claim in Paragraphs 183 through 185 of the Complaint. There, Plaintiffs allege, upon information and belief, that Louis and Fowler – *not Volant* – "have willfully copied the contents of [Plaintiffs'] source code and are using it without Plaintiffs' permission." (Compl. ¶ 183.) Plaintiffs next allege, without any explanation, that they are somehow entitled to damages against *all Defendants* (Compl. ¶ 184) for this purported infringement. Then they try to justify this legal conclusion by vaguely asserting that "all the Volant Defendants are jointly and severally liable for this copyright infringement under alter ego principles." This hollow attempt to hold Volant liable for actions alleged solely against Louis and Fowler, pursuant to undefined "alter ego principles," borders on absurd. Volant has existed for years, and Louis and Fowler began working there barely two months ago. The Court should reject this wholly meritless attempt to assert liability against Volant.

Moreover, it is axiomatic that an alleged copyright owner cannot sue for copyright infringement unless the copyright has been registered. *See Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC, et al.,* 586 U.S._, 4 (2019). A copyright infringement claim cannot survive when a plaintiff "fail[s] to establish ownership of a valid copyright, an essential prerequisite for a prima facie case of copyright infringement." *Poon v. Roomorama, LLC,* No. 09-cv-3224, 2009 WL 3762115, at *6 (S.D.N.Y. Nov. 10, 2009) (Berman, J.). To support the claim that the clearing system created by Plaintiffs is registered, Plaintiffs direct the court to two documents, neither of which identify the registration of a clearing system or any "source code and software" (Compl. ¶ 182) that could serve as the basis for a copyright infringement claim. *(See* Lek Decl., Exs. 1, 2.)

10

The fact that Plaintiffs may have registered certain copyrights does not establish that their clearing system source code or software is registered with the Copyright Office. Further, all but one of the copyrights to which Plaintiff directs the court are over 20 years old. (Lek Decl., Exs. 1, 2.) Plaintiffs also point to one copyright registered in August 2018, the month following Plaintiffs' termination of the Individual Defendants. *(See* Lek Decl., Ex. 2.) However, that registration similarly has no connection to the technology at issue. There is no reference in the registration to clearing technology. *(Id.)* Further, Plaintiffs do not provide any copies of the code that they allege was registered and then copied. *(Id.)*

Thus, Plaintiffs' copyright infringement claim against Volant should be dismissed.

### IV. THE COMPLAINT FAILS TO STATE A CLAIM AGAINST VOLANT FOR TORTIOUS INTERFERENCE WITH CONTRACT.

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006) (dismissing tortious interference with contract claim); *see also Lama Holding Co., et al. v. Smith Barney Inc. et al.*, 88 N.Y.2d 413 (1996).

Here, this Court need not even look past the first element of tortious interference because Plaintiffs have not alleged the existence of a valid and enforceable contract. The Non-Compete and Confidentiality Agreements are not valid because (1) the non-compete agreement is overly broad and unreasonable, and (2) the non-compete agreement is no longer in effect because Plaintiff LSC terminated the Individual Defendants without cause. Further, Plaintiffs have failed to

11

adequately allege any facts that would support their conclusory allegation that Volant intentionally procured any breach of by the Individual Defendants.

### A.     The Noncompete Agreements Are Overbroad and Unenforceable.

Under well-settled New York law, a non-compete agreement is enforceable only "to the extent that the covenant is reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *AM Medica Comm. Grp. v. Kilgallen*, 261 F. Supp. 2d 258, 262 (S.D.N.Y. 2003) Iinternal quotations omitted). "[C]ovenants not to compete should be strictly construed because of the powerful considerations of public policy which militate against sanctioning the loss of a person's livelihood." *Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 370 (2015) (internal quotation and alteration marks omitted). Thus, "[r]estrictive covenants in employment contracts are enforced only if they are reasonable and necessary to protect valid business interests." *Mathias v. Jacobs*, 167 F. Supp. 2d 606, 612 (S.D.N.Y. 2001). Such a restraint is enforceable only if it "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public." *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 388-89 (N.Y. 1999) (emphasis in original). If any one of these elements is violated, the covenant is invalid and will not be enforced. *Id.*

Here, the Non-Compete and Confidentiality Agreements that Plaintiffs seek to enforce unreasonably require the Individual Defendants to not compete with Plaintiffs or become employed by firms that compete with Plaintiffs "for a period of eighteen (18) months." (Compl. ¶97; Lek. Decl. Exs. 3, 4 at ¶ 3.) More specifically, Plaintiffs' noncompete agreement with Nicolas Louis states that Louis cannot:

> for the period of eighteen (18) months after ceasing employment with the Company . . . be employed or work in any capacity similar to the capacity in which I worked for the Company during the term of my employment, nor will I be employed or

12

> work for any firm, person or organization involved in the creation, promotion, licensing or sale of software for use by companies in the securities industry in connection with trading on any national stock exchange, absent prior written approval from the Company.

(Lek Decl., Ex. 3 ¶ 3.)  Plaintiffs' noncompete with Jonathan Fowler states that Fowler cannot:

> for the period of eighteen (18) months . . . compete with the Company or become employed by or engage in any work for any firm, person or organization involved in the creation, promotion, or licensing or sale of software for the trading of securities or order entry and routing, which competes with the company . . ."

(Lek Decl., Ex. 4 ¶ 3.)  These 18-month non-compete provisions are plainly overbroad and anti-competitive.  *See Veramark Techs., Inc. v. Bouk*, 10 F. Supp. 3d 395, 407 (W.D.N.Y. 2014) (holding an overreaching and coercive noncompete should not be enforced); *EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 313 (S.D.N.Y. 1999) (finding a one-year noncompete covenant to be too long in a dynamic, technologically based industry).

### B. Termination of the Individual Defendants' Employment Without Cause Prevents the Enforcement of the Noncompete Clauses.

The noncompete clauses are unenforceable for a separate, additional reason. "New York courts will not enforce a non-competition provision in an employment agreement where the former employee was involuntarily terminated." *SIFCO Indus., Inc. v. Advanced Plating Tech., Inc.*, 867 F. Supp. 155, 158 (S.D.N.Y. 1994); *Arakelian v. Omnicare, Inc.*, 735 F. Supp. 2d 22, 41 (S.D.N.Y. 2010).  Because a termination without cause destroys "the mutuality of obligation on which a covenant not to compete is based," it would be "unconscionable" to enforce a noncompete agreement.  *Arakelian*, 735 F. Supp. 2d at 41 (quoting *Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 529-30 (2d Cir. 2006)).

Here, Plaintiffs terminated the Individual Defendants' employment without cause.  On July 13, 2018, LSC terminated the Individual Defendants "effective immediately." (Garfield Decl., Ex. A.)  Thus, because Plaintiffs terminated the Individual Defendants' employment without cause, it

would be unconscionable to enforce the noncompete agreements. Where a noncompete is unenforceable, a claim for tortious interference with that agreement must fail. *See Installed Bldg. Products, LLC v. Cottrell*, No. 13-CV-1112, 2014 WL 3729369, at *11 (W.D.N.Y. July 25, 2014).

### C. Plaintiffs Have Failed to Adequately Allege that Volant Intentionally Procured the Individual Defendants' Breach.

Plaintiffs' allegations related to intentional procurement are woefully insufficient. A plaintiff may not plead "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," (*Sullivan*, 2015 WL 4393316, at *2), and thus Plaintiffs fail to set forth a plausible claim for relief. Notably, Plaintiffs' sole allegations related to Volant's conduct are predicated "[u]pon information and belief." (Compl. ¶ 224 and 225.) Plaintiffs allege in a conclusory fashion that Volant "solicit[ed]" the Individual Defendants "to disclose and use Plaintiffs' confidential and proprietary information for Volant's benefit" and "hired [the Individual Defendants] in order to help Volant unfairly compete." (Compl. ¶ 224.) Glaringly absent from Plaintiffs' contention, however, is any mention of *"who"* from Volant tortuously interfered, *"what"* type of Plaintiffs' confidential and proprietary information was solicited to be disclosed and used, and *"where"* or *"when"* or *"how"* such solicitation took place. Plaintiffs have not pled any facts to support the conclusory allegations contained in this paragraph of their Complaint, which is the sole paragraph related to Volant's supposed intent. (Compl. ¶ 224.) Courts have dismissed similar tortious interference claims that have failed to include such critical detail. *See Yucyco, Ltd. v. Republic of Slovenia*, 984 F. Supp. 209, 225 (S.D.N.Y. 1997) (holding plaintiff failed to properly plead defendants intentionally procured the breach as a result of plaintiff's failure to include critical details).

Accordingly, Plaintiffs' tortious interference with contract claim should be dismissed for the reasons set forth above.

## CONCLUSION

For the foregoing reasons, Volant respectfully requests that the Court grant its Motion to Dismiss Counts One, Two, and Six of Plaintiffs' Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and that the Court grant such other and further relief as the Court deems just and proper.

Dated: April 15, 2019

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:   /s/ Toby S. Soli
      Toby S. Soli
200 Park Avenue
New York, New York 10166
(212) 801-3196
solit@gtlaw.com

-and-

Howard Schiffman
Max Garfield
Hannah M. Thibideau
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000

*Attorneys for Defendants Volant Holding, LLC d/b/a Volant Trading; Volant Trading, LLC; Volant Liquidity, LLC; and Volant Execution, LLC*