

Toby S. Soli
Tel (212) 801-3196
Fax (212) 801-6400
solit@gtlaw.com

April 29, 2019

**VIA ECF**
Hon. Barbara Moses
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

      Re:   *Lek Securities Corporation and Rox Systems, Inc. v. Nicolas Louis, et al.*
              Case No. 19-CV-02142 (RMB) (BCM)

Dear Judge Moses:

    This firm represents the Volant Defendants in the above-referenced matter. I write in response to this Court's Order, dated April 26, 2019 [Dkt.#79], to address Plaintiffs' failure to comply with the Case Management Order [Dkts. #49, #65].

    From the beginning, the Volant Defendants have been consistent in their position – Plaintiffs have no evidence to support a claim against Volant, and Plaintiffs are weaponizing the costs of litigation to punish the defendants and harm Volant's legitimate business pursuits. Volant has repeatedly requested that, in the absence of a full dismissal for failure to state a claim or lack of jurisdiction, the parties should exchange narrow document discovery and immediately proceed to a hearing. Instead, the Court set a schedule and allowed broad discovery that severely prejudices defendants and allows Plaintiffs to go on a fishing expedition – gaining improper insight into Volant's business plans and trade secrets, while at the same time providing ammunition to bully the defendants into submission because of the unreasonable costs of litigation. That is exactly what is happening and continues to happen. Plaintiffs' failure to comply with the Case Management Order, and requests to extend production and discovery deadlines, are just another example of Plaintiffs' improper tactics. Indeed, Plaintiffs' two productions of almost entirely irrelevant materials, followed by requests for more time to apparently produce more irrelevant materials, simply reinforces that Plaintiffs' only aim is to impose untenable costs on defendants to force them to give up, because Plaintiffs know they have no legitimate claims.

    The Case Management Order required all parties to ***produce*** all responsive documents, and ***serve*** a privilege log by ***no later than April 19, 2019***. The Volant Defendants fully complied. On April 19, the Volant Defendants produced 791 documents, totaling 1827 pages, including numerous documents about ***Volant's business plans to create and develop a state-of-the-art clearing system***. Even though many of these documents are confidential and could provide Plaintiffs with a competitive business advantage, the Volant Defendants were careful not to over-designate. Out of the 791 documents produced, 191 (less than 25%) were marked "attorneys' eyes only", and only 59 (less than 8%) were marked "confidential" under the terms of the Protective Order. Most importantly, these documents were actually ***produced***. The Volant Defendants also provided a complete privilege log, containing 281 entries detailing privileged documents, emails and attachments. Like the confidential documents, the Volant

Hon. Barbara Moses
April 28, 2019
Page 2

Defendants were careful not to over-designate privilege documents, and spent a significant amount of time and money to review potentially privileged documents to determine whether they were actually privileged. Most importantly, the Volant Defendants actually *served* the privilege log on April 19. Indeed, despite limited time and significant costs, the Volant Defendants fully complied with the Case Management Order.

Conversely, Plaintiffs admit they failed to comply with the Case Management Order. On Friday, April 19, Plaintiffs produced only 238 documents (the vast majority of which are completely irrelevant or were previously produced by the Individual Defendants in July 2018), marked almost every document "attorneys' eyes only", and indicated in the cover-letter that "the production is continuing" and a privilege log will be provided "upon completion of the production…." Despite demands and requests to meet and confer over the next several days, Plaintiffs failed to provide any information regarding what else they intended to produce and when.

On Monday, April 22, the Volant Defendants directly asked Plaintiffs:

What categories of documents do Plaintiffs still need to produce? When will Plaintiffs' production be substantially complete? When will Plaintiffs provide the privilege log? As you know, we need to write a letter to Judge Moses by noon on Thursday, so at a minimum a time-table from Plaintiffs for the production and privilege log is imperative. Please let [counsel] know *asap*.

Plaintiffs responded that they were "conferring" and would get back to the Volant Defendants on Tuesday. Despite their promise, Plaintiffs did not get back to the Volant Defendants on Tuesday.

On Tuesday, April 23, the Individual Defendants sent Plaintiffs a letter detailing the deficiencies in Plaintiffs' production and objecting to the overuse of the "attorneys' eyes only" designation. As described in the letter, almost none of the 238 documents had anything to do with the claims in this case, and Plaintiffs have failed to produce documents sufficient to identify the alleged trade secrets at issue, much less what has been allegedly misappropriated, when and by whom. As an example, Plaintiffs produced six copies of the "FIX Specs," which are instructions that LSC provides to its clients and counterparties to facilitate a connection to LSC's trading platform. Plaintiffs marked all six copies "attorneys' eyes only". However, the "FIX Specs" have nothing to do with this case, relate to trading as opposed to clearing, and in any event, are freely given out to any of LSC's trading platform clients that request it. In their letter, the Individual Defendants provided many more examples of Plaintiffs' production failures, but Plaintiffs did not respond to the letter on April 23, and have never explained why they produced so many irrelevant documents and marked almost everything "attorneys' eyes only".

On Wednesday, April 24, at approximately noon, the Volant Defendants sent Plaintiffs another letter, joining in the Individual Defendants' letter, and pointing out Plaintiffs' failure to meet and confer or provide any information regarding what else Plaintiffs intended to produce and when. The Volant Defendants again referenced the obligation to submit a joint letter to Your Honor by noon on Thursday (in less than 24 hours), and asked Plaintiffs to explain immediately how and when Plaintiffs intended to rectify their deficiencies and fully comply with the Case Management Order. Plaintiffs did not respond to the letter for hours, finally indicating

Hon. Barbara Moses
April 28, 2019
Page 3

---

they were available only after 5:00 pm or at 9:00 am Thursday morning. In response, the Volant Defendants specifically asked whether Plaintiffs intended to make an additional production before noon on Thursday. Plaintiffs did not respond for hours, so the Volant Defendants sent another email at 5:45 pm, indicating that if Plaintiffs intended to make an additional production, the parties should have the call that night. Plaintiffs did not respond until after 8:00 pm on Wednesday evening when they sent an email indicating for the first time that they intended to make an additional production before noon on Thursday, and Plaintiffs would meet and confer for the first time on Thursday at 9:00 am. Plaintiffs made vague reference to the volume of documents that had been *gathered*, but provided no details regarding the timing, volume, or scope of their actual production or any future productions.

During the 9:00 am call on Thursday morning, just hours before the parties' joint status letter was due, Plaintiffs *for the first time* provided their excuses as to why they were unable to comply with the Case Management Order. Generally, Plaintiffs indicated they had gathered 3.6 million documents from six custodians and although they had worked diligently to narrow the number of documents to review, including by applying ESI search terms, they had technical difficulties loading all of the data, and many of the search terms had resulted in false "hits." This is a rather unremarkable statement and means relatively nothing in the context of ESI discovery. The entire number of documents that a custodian has in its possession before search terms are applied is mostly irrelevant. As Plaintiffs know, a custodian could have thousands of emails and documents, and none of them could be "hits" after the search terms are applied.

More importantly, Plaintiffs did not raise any issue about the volume of documents that had been *gathered* until the very last minute. In the Thursday morning call, Plaintiffs argued they were forced to gather this many documents because the Individual Defendants' requests dated back to the 1990's. Even assuming that is true (which it is not; the majority of the requests cover a much narrower time-frame), as soon as Plaintiffs realized the date-range of certain requests may be problematic, they should have contacted defendants, instead of just proceeding to gather decades of materials and emails that Plaintiffs know are irrelevant.

Similarly, Plaintiffs complained that they had technical difficulties loading all of the data because of "indexing" problems that were eventually addressed with their ESI vendor. Plaintiffs provide absolutely no information about when these technical difficulties occurred. Did Plaintiffs actually gather their evidence at any time *before* they filed their Complaint and *ex parte* request for a TRO, or did Plaintiffs file those pleadings without any evidence whatsoever? If Plaintiffs gathered their ESI only *after* filing this action, when did they first know that their ESI vendor was unable to load the documents into a review platform? Most importantly, why didn't Plaintiffs contact defendants and explain these supposed technical difficulties or suggest a more stream-lined solution? The answer seems obvious – Plaintiffs believe discovery is just another litigation tactic to bully defendants into submission, and the longer Plaintiffs drag their feet and the more burdensome they can make the discovery process, the less likely defendants will ever be able to reach a hearing on the merits given the oppressive litigation costs.

During the meet and confer on Thursday morning, Plaintiffs also indicated their production was slowed as a result of numerous false "hits" on certain search terms. For example, Plaintiffs indicated the term "proprietary" appeared in a form disclosure at the bottom of numerous emails having nothing to do with any of the issues in this case. The Volant

Defendants expressed frustration that Plaintiffs had not raised these issues before now, despite the parties' obligation and willingness to negotiate reasonable search terms that result in the production of responsive and relevant documents. Plaintiffs indicated that they would negotiate narrower search terms with defendants going forward, but they failed to explain why they never raised the false "hits" issue before April 25, almost a week *past* the production deadline.

Nevertheless, during the 9:00 am call on Thursday, Plaintiffs represented that the technical problems had been resolved, counsel and 18 reviewers from their ESI vendor had worked hundreds of hours, and Plaintiffs would be making an additional production before noon. Although Plaintiffs made clear that their production would not be entirely complete, Plaintiffs implied defendants would finally be receiving a substantial production of relevant material. Plaintiffs also represented that their production would be completed as soon as possible, and requested defendants consent for an additional week (8 days), until May 3, to complete their production. The Volant Defendants made clear that they would not consent to changing the deposition dates (May 6 – May 31), and defendants should not be prejudiced by receiving documents just days before depositions, without sufficient time to analyze and address any deficiencies in Plaintiffs' production. Based upon Plaintiffs' assurances about their second document production (that was to occur in a matter of hours) and Plaintiffs' acknowledgement that the Volant Defendants were not agreeing in advance to change any dates in the Case Management Order, the Volant Defendants agreed to reserve their rights in the joint letter, meaning they would not yet set forth the details of their complaints about Plaintiffs' production, or lack thereof, and would wait to see what Plaintiffs' produced. And, although Plaintiffs initially requested defendants' consent to postpone the April 29 status conference, as reflected in the joint letter, Defendants instead requested that this Court hold a telephonic or in-person conference as scheduled to discuss any changes that might be necessary to the Case Management Order to prevent any prejudice to Defendants as a result of Plaintiffs' delay.

Then, within 24 hours of Plaintiffs' second production it became apparent that the second production was as defective as the first. Plaintiffs argue they produced 387 additional documents, totaling 2,298 additional pages, but as explained in the Individual Defendants' April 26 letter, Plaintiffs' second production consists almost exclusively of irrelevant documents, and almost all of the documents are designated as "attorneys' eyes only". Plaintiffs' over-use of this designation makes it nearly impossible for the Volant Defendants to properly analyze the documents, and makes a document-by-document objection unduly burdensome, especially when Plaintiffs continue to produce irrelevant documents.

The Volant Defendants agree with the Individual Defendants – Defendants cannot prepare a defense unless Plaintiffs produce responsive and relevant documents on a timely basis, without the over-use of the attorneys-eyes-only designations. Plaintiffs have been aware that they would be pursuing this case since February, yet it is the end of April, and Plaintiffs have failed to produce basic information fundamental to Plaintiffs' claims. More specifically, Plaintiffs have failed to produce, among other things:

- documents related to the Volant Defendants;
- documents sufficient to identify the alleged trade secrets, what has allegedly been misappropriated, when and by whom;

- documents showing the ownership of any alleged trade secret;
- documents sufficient to show and identify any development costs associated with the alleged trade secret;
- documents referring or relating to Plaintiffs' allegation that it created (and has) the only non-mainframe-based clearing system in the United States;
- documents relating to license agreements that Plaintiffs have entered into to provide their clearing system;
- agreements among Rox and Lex regarding the license of any alleged trade secrets or technology;
- documents and communications Plaintiffs contend constitute evidence that Louis and/or Fowler misappropriated Plaintiffs trade secrets; and
- documents and communications sufficient to identify the trade secrets Plaintiffs contend Louis and/or Fowler could inevitably disclose to the Volant Defendants.

Conversely, as outlined by the Individual Defendants, Plaintiffs' first two productions do contain hundreds of clearly irrelevant documents, and almost all of them are marked "attorneys' eyes only." Plaintiffs should not be permitted to maintain a case that causes substantial burden to defend, while at the same time refusing to produce responsive and relevant documents on a timely basis.

Accordingly, the Volant Defendants request that this Court enter an Order: (1) requiring Plaintiffs to produce only responsive and relevant documents, by no later than May 3, or confirm that such documents do not exist; (2) requiring Plaintiffs' to re-designate their production, without the over-use of the "attorneys'-eyes-only" designation by no later than May 3; (3) requiring Plaintiffs to produce a complete privilege log by May 3; (4) allowing Defendants to submit a letter outlining any additional disputes regarding Plaintiffs' production by no later than noon on May 6; and (5) setting a discovery conference for the afternoon of May 6 or as soon as thereafter as the Court is available. Furthermore, this Court should deny Plaintiffs' request to move the deadlines in the Case Management Order for "all" parties. Given their failure to comply, Plaintiffs should be precluded from raising any issues regarding Defendants' production. Defendants complied with the Case Management Order, and Plaintiffs have not raised any issues with defendants' production or discovery responses in over 10 days. Plaintiffs were required to raise any issue before April 25, and they failed to do so. There is simply no justification for Plaintiffs' failure to address defendants' document production, and allowing Plaintiffs' another week under this expedited discovery schedule would only further prejudice defendants.

Respectfully submitted,

*Toby S. Soli*

Toby S. Soli

cc: all counsel of record