大成 DENTONS

**Mark D. Meredith**
Counsel

mark.meredith@dentons.com
D   +1 212 768 6852

Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020-1089
United States

dentons.com

April 29, 2019

**Via ECF**

Honorable Barbara Moses
United States Magistrate Judge
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      Re:    *Lek Securities Corporation, et al. v. Louis, et al.*
                Case 1:19-cv-02142-RMB-BCM

Dear Judge Moses:

      Pursuant to the Court's April 26, 2019 Order (ECF No. 79), plaintiffs Lek Securities Corp. ("LSC") and ROX Systems, Inc. ("ROX") (together, "Plaintiffs"), by their attorneys Dentons US LLP and Tannenbaum Helpern Syracuse & Hirschtritt LLP, respectfully submit this letter in response to the letter, dated April 26, 2019 (ECF No. 78) (the "Letter"), from Nicolas Louis and Jonathan Fowler (the "Individual Defendants") regarding the upcoming Discovery Hearing on April 29, 2019.

      As a threshold matter, the Individual Defendants' reversal of position – urging an in-person conference a mere 24 hours after they joined all parties on April 25 in agreeing to defer the conference – reflects gamesmanship more than actual concern.  As Plaintiffs explained to the Individual Defendants on April 25, Plaintiffs had collected more than 3.6 million documents, had engaged 18 attorneys to review the documents and were seeking to overcome a technical indexing problem that their vendor had encountered which had delayed the review.  Significantly, <u>the Individual Defendants had refused to participate in generating search terms when the parties had conferred about discovery on April 12</u>, so the Plaintiffs used their best efforts and best judgment in proceeding with their review of the more than 3.6 million documents – seeking to be more inclusive to ensure responsive documents were identified.  As was to be expected in a review of so many documents, the first sets of materials produced in a rolling production did not cover all the topics.  Accordingly, counsel for all parties agreed on April 25 that it would make more sense to defer their discovery disputes until after Plaintiffs had been able to complete its review and production later this week.

      Nonetheless, allegedly based on their dissatisfaction with their review of the 387 additional documents (2,298 pages) produced on Thursday, April 25 (with hundreds of thousands of additional documents to be reviewed), the Individual Defendants have insisted on an in-person conference.  In

Hamilton Harrison & Mathews ► Mardemootoo Balgobin ► HPRP ► Zain & Co. ► Delany Law ► Dinner Martin ► Maclay Murray & Spens ► Gallo Barrios Pickmann ► Muñoz ► Cardenas & Cardenas ► Lopez Velarde ► Rodyk ► Boekel ► OPF Partners ► 大成

大成 DENTONS

Honorable Barbara Moses
April 29, 2019
Page 2

dentons.com

their Letter, the Individual Defendants complain that Plaintiffs' production is delayed, largely nonresponsive, and designated too heavily toward Attorneys' Eyes Only. Letter at 1-2. As detailed below, Plaintiffs offer two responses. *First*, Plaintiffs have further supplemented their production over the weekend and produced another 4,215 pages of documents to Defendants. Although many more documents will be produced as promised over the course of this week, Plaintiffs' production as supplemented, now includes responsive documents in nearly every category outlined by the Individual Defendants' letter. Thus, as Plaintiffs' counsel has already indicated to counsel for the Individual Defendants, any discussion regarding the quality of the parties' production of documents will be far more productive once the parties have completed their respective productions. *Second*, having completed an initial review of both the Individual Defendants' and Volant Defendants' productions, it appears that the Individual Defendants' motive here is to obscure the deficiencies in their own productions by first seeking to attack Plaintiffs' document review process.

A.  Plaintiffs Have Already Produced Thousands of Pages of Responsive Documents and Have Requested a Reasonable Extension to Complete Their Production.

As of the writing of this letter, Plaintiffs have now produced over 8,000 pages of documents. The production includes responsive documents in nearly every category outlined in the Individual Defendants' Letter. Indeed, Plaintiffs have now produced responsive documents in the following categories:

- Documents sufficient to show and identify Plaintiffs' Trade Secrets and Confidential Information and specifications of Plaintiffs' Clearing System (Individual Defendants' Document Requests ("ID Requests") 1-3; Volant Defendants' Document Requests ("VD Requests") 1-3);
- Documents sufficient to show and identify the owner of Plaintiffs' Trade Secrets (ID Request 4);
- Documents sufficient to show and identify each and every instance in which a present or former employee of Plaintiffs accessed the LekSec Network via a VPN connection (ID Request 7);
- Documents and communications referring or relating to efforts taken by Plaintiffs to secure or protect any of Plaintiffs' Trade Secrets or Confidential Information (ID Request 8; VD Request 8);
- Documents and communications concerning or relating to Operation Secret Octopus and B. Riley and the Individual Defendants' plan to misappropriate Plaintiffs' Trade Secrets (ID Request 11; VD Request 17));
- Documents concerning license agreements for Plaintiffs' Clearing System between Plaintiffs and third parties (ID Requests 13 and 15; VD Requests 10 and 11);
- Copies of any and all documents created to market, promote or advertise a license for any aspect of Plaintiffs' Clearing System (ID Request 14);
- Audio or video recordings of Louis and/or Fowler (ID Request 16);
- Documents related to the prices LSC charges for clearing services (ID Request 21);
- Documents and communications concerning the handling and safeguarding of Plaintiffs' Trade Secrets (ID Request 22);
- Non-privileged documents and communications concerning, referring or relating to Louis and/or Fowler created after June 11, 2018 (ID Request 23);
- Documents regarding notice to Louis and/or Fowler concerning the reporting safe harbor provisions of the Defend Trade Secrets Act (ID Request 25);

- Documents and communications referring or relating to B. Riley from November 1, 2017 to the present (ID Request 32);
- Copies of all restrictive covenants executed by employees or independent contractors of LSC or Rox at any time (ID Request 33) (Plaintiffs have produced Louis's and Fowler's restrictive covenants. Plaintiffs object to this request on the grounds that it is overbroad in that it asks for restrictive covenants of all of Plaintiffs' employees);
- Copies of Louis's and Fowler's employee files (ID Request 34);
- Documents and communications concerning the Individual Defendants' plan to recreate Plaintiffs' Clearing System (VD Request 7);
- Documents identifying Plaintiffs' Copyrights (VD Request 15);
- Documents and communications concerning the audio and visual recording of the "June 13 Discussion" (VD Request 18);
- Louis's and Fowler's noncompetition agreements at LSC (VD Request 19);
- Documents and communications related to Louis's and Fowler's termination at LSC (VD Request 24).

In response to the Individual Defendants' complaint that many of the produced documents included in Plaintiffs' first two batches of documents are allegedly nonresponsive, Plaintiffs point out that not only are Plaintiffs continuing to use 18 vendor staff reviewers that have worked over 1,086 hours thus far to review and produce these documents, but also that Plaintiffs' counsel has repeatedly encouraged Defendants' counsel to participate in and provide search terms for searching Plaintiffs' 3.6 million documents.  In fact, counsel for the Individual Defendants and Volant finally agreed to review Plaintiffs' search terms late last week, though neither has provided a single suggestion or proposed any alternative search terms.  The Individual Defendants' stance defies logic.  If counsel for the Individual Defendants really wanted to review responsive documents rather than serve Plaintiffs with overbroad document requests -- many of which date back to 1994[1] -- they would have taken up Plaintiffs' offer to cooperate with Plaintiffs to narrow down the scope of the document search.

Counsel for the Individual Defendants also complains that Plaintiffs have been over-inclusive in designating documents as "Attorneys' Eyes Only."  As a preliminary point, this case involves Plaintiffs' highly confidential trade secrets.  As such, Plaintiffs seek to avoid unintentional disclosure of highly sensitive, confidential trade secret information.  Despite Plaintiffs' concern, Plaintiffs' counsel are working with its vendor to correct any issues related to so-called over-inclusive confidentiality designations.  Further, although counsel for the Individual Defendants has stated that a document-by-document objection is unduly burdensome, there is a process in place that addresses this potential problem in the Confidentiality Order by Consent ¶ 9 (ECF No. 54).  Without knowing which specific document designations are objectionable, it is impossible for Plaintiffs to intelligently respond this complaint. To that end, Plaintiffs note that Volant has liberally marked documents with Attorneys' Eyes Only designations as well, but first seeks to meet and confer with Volant about those designations before raising disputes about them with this Court.

Plaintiffs would strongly prefer to work cooperatively with counsel for the Defendants to provide responsive documents in a timely manner for all parties concerned that are both in proportion to the claims in the case, as required by Federal Rule of Civil Procedure 26, and produced after a

---

[1] Individual Defendants' Request 30 asks for "[a]ll documents requested by the Volant Defendants." Many of the Volant Defendants' requests ask for documents dating as far back as 1994.

Honorable Barbara Moses
April 29, 2019
Page 4

dentons.com

reasonable search.  This is why Plaintiffs request an extension until May 3rd to produce all of its documents.

B.   Defendants Have Failed to Produce Responsive Documents in a Number of Critical Categories and Have Not Made Adequate Disclosures Consistent with Fed. R. Civ. P. 26.

Because the parties had agreed on April 25 to jointly request an adjournment of the Court conference on April 29, the parties deferred meeting and conferring on discovery disputes.  However, in light of the Court's decision to hold an in-person conference this morning, and in light of the Defendants' presentation to the Court of their concerns with Plaintiffs' production to date, we believe it is appropriate to inform the Court that the Individual Defendants' and Volant Defendants' productions appear to omit the following significant categories of documents:

1. Documents concerning the negotiation and drafting of the employment agreements between Volant and the Individual Defendants;
2. Documents concerning Volant's purported restrictions placed on the Individual Defendants' work on Volant's clearing system; and
3. Documents concerning safeguards Volant purportedly put in place to prevent the Individual Defendants from transmitting to Volant, or using for Volant any software code and/or other trade secrets learned or developed while employed by Plaintiffs.

Defendants relied heavily on purported protections set forth in the Individual Defendants' employment agreements and Volant's purported restrictions on and oversight of the Individual Defendants' work at Volant in support of their argument that Volant would not obtain any of the Plaintiffs' trade secrets or confidential information.  Therefore, any restrictions on the Individual Defendants' work imposed by Volant -- to the extent that there were any -- and the history of the negotiations and drafting of the terms of their employment agreements are highly relevant.  Defendants' privilege logs do not assert any privilege for the employment negotiations and/or drafting of the agreements between Volant and the Individual Defendants.  Accordingly, the Defendants should be compelled to supplement their production to produce all documents concerning the topics set forth above.  Further, a number of the Defendants' emails refer to attachments or links to documents (such as "Google Slides") that were not produced.  The Defendants should be compelled to supplement their production with all attached or otherwise embedded documents referenced in their communications.

In addition, Volant has not produced any of the following types of documents:

1. Text messages;
2. VPN logs (which would confirm whether the Individual Defendants have been complying with the Court's order barring their work for Volant); and
3. Documents that identify the Chinese fintech firm involved with Volant's clearing system (thus continuing to prevent Plaintiffs from determining what, if any, discovery may be obtainable from that still unknown entity).

Volant also failed to identify what appears to be a crucial non-party witness in their interrogatory responses.  Steven Givot, a consultant to Volant, appears to have been centrally involved in the discussions and planning related to the creation and development of a clearing system

for Volant. Volant has produced numerous communications between Mr. Givot and Volant's CEO Brian Donnelly, describing plans for the clearing system, the Individual Defendants' anticipated work on the system, and a discussion of whether Donnelly was considering purchasing the Plaintiffs rather than building a clearing system from scratch. Accordingly, Plaintiffs should be permitted to serve non-party document and deposition subpoenas on Mr. Givot and be provided with at least four (4) hours to depose Mr. Givot. Further, all Defendants should be required to promptly produce all documents and communications concerning Mr. Givot that are relevant to the claims and defenses in this lawsuit.

           Respectfully submitted,

           /s Mark D. Meredith
           Mark D. Meredith

cc: All counsel of record (via ECF)